Stengel v. Preston, &c.

---

CASE 92—PETITION EQUITY—FEBRUARY 27.

## Stengel v. Preston, &c.

APPEAL FROM LOUISVILLE LAW AND EQUITY COURT.

1. STREET IMPROVEMENTS.—In assessing property for the cost of street improvements, under the charter of the city of Louisville, it is not necessary to confine each assessment and apportionment inflexibly to a single square. Property in adjoining squares may, in some cases, be included in the same assessment and apportionment.

The property on one side of a street was divided into four squares, while that on the other side constituted but a single square, and the street was improved under one ordinance and one contract. *Held*—That the lots in the four adjoining squares can be assessed for the cost of the improvement as if there were, in fact, but a single square on that side of the street.

2. SAME—MISTAKE IN ASSESSMENT.—The payment and acceptance of an assessment for street improvements can not be regarded as an accord and satisfaction of an additional amount afterward found by a corrected assessment to be due, as the mistake in the assessment was not then known to, or in the contemplation of, either party.

3. SAME—LIMITATION.—The action is barred by limitation as to one of the defendants, as to whom no cause of action is stated, except in an amended petition filed more than five years after the cause of action accrued.

H. M. LANE FOR APPELLANT.

1. The fact that the property is not benefited by the improvement constitutes no defense to the assessment. (Pearson v. Zable, 78 Ky., 170;

Baltimore v. Hospital, 56 Md., 1; Spencer v. Merchant, 125 U. S., 345; Preston v. Roberts, 12 Bush, 589.)

2. The time during which appellant was legally restrained from the prosecution of his claim against J. W. Barr is not to be estimated as a part of the period of limitation. (Gen. Stats., chap. 21, art. 4, sec. 21; Smith v. B. & N. Iron Co., 11 Bush, 391; Harris v. Beaven, 11 Bush, 256; Bethel v. Bethel, 6 Bush, 68.)

The court will take judicial notice of its own records, so far as they pertain to the case in hand. (Bank v. Bryant, 13 Bush, 419.)

3. The statute did not begin to run in favor of J. W. Barr until the assessment was made, which was not until March 2, 1878 (L. & N. R. Co. v. Commonwealth, 1 Bush, 261); but J. W. Barr was sued in this case, and summons issued against and served on him June 3, 1876. The issue of this summons was the commencement of the action against him, and is unaffected by the question of the sufficiency or insufficiency of the petition. (Thompson v. Bell, 6 Mon., 560; Trabue v. Sayre, 1 Bush, 130; Butts v. Turner, 5 Bush, 436 ),

4. The acceptance by appellant from Webber & Schillinger of a less sum than was due did not amount to an accord and satisfaction, as there was neither controversy nor dispute between the parties, and the amount accepted was the extent of their liability as then ascertained. (Preston v. Roberts, 12 Bush, 576.)

The power of the sovereign can not be paralyzed in the imposition of taxes by an accord and satisfaction entered into by its agent. (4 Mon., 487.)

The acceptance of a less sum than is due, or the agreement to accept it, is no bar to a suit for the sum due if there be no other consideration. (Patterson v. Garrett, 7 J. J. M., 114; Culter v. Reynolds, 8 B. M., 598; Fenwick v. Phillips, 3 Met., 88.)

One obligation, given in satisfaction for another, is no discharge, whether grounded upon accord or not. (Bank v. Letcher, 3 J. J. Mar., 196; Bacon's Abridgment, Title "Accord and Satisfaction;" Bank v. McNeill, 10 Bush, 60; Lowry v. Fisher, 2 Bush, 74.)

5. Contracts for the improvement of public ways, under the charter of the city of Louisville, even where the ordinance provides that they shall be by the square, are valid and enforceable, where they embrace more or less territory than a square, if they are in consonance with the main purpose of the ordinance; and where the work done under such contracts is in accordance with either the ordinance or contract, the cost of the improvement should be charged to, apportioned among, and enforced against, the owners of the lots, according to the rule prescribed by the charter. (Broadway, &c., v. McAtee, 8 Bush, 516; Craycraft v. Selvage, 10 Bush, 700; Dulaney v. Bowman, MS. Op., 1875; Railroad Co. v. Connelly, 10 Ohio St., 159, 163; Creighton v. Scott, 14 Ohio St., 438; St. Louis v. Clemons, 36 Mo., 437; Lafayette v. Fowler, 34 Ind., 140.)

P. A. GAERTNER AND HARRISON AND McGRAIN OF COUNSEL ON SAME SIDE.

JOHN K. GOODLOE FOR BARR, TRUSTEE.

1. No personal judgment should be rendered against Barr, the Trust Company, or any other party, because a personal judgment upon grading and paving claims is not proper.

2. There should not be a personal judgment against Barr, because there is no evidence to show that he was the owner of the land for the improvement of which he is sought to be charged.

3. As neither the amended petition of June 2, 1876, nor that of March 2, 1878, set up any cause of action upon which a judgment could have been rendered against Barr, the action as to him is barred by limitation; and there is nothing in the answer of Barr which cures the defects in the amended petitions, so-called. (Riggs v. Maltby, 2 Met., 90; Fible v. Caplinger, 13 B. M., 464.)

BROWN, HUMPHREY & DAVIE FOR APPELLEES.

1. The city charter means, that the part of a street binding on a particular square shall be paid for only by the property in that square; and that property in another square, though on the same street, shall not be called on to contribute. This is because the expense of making the street may be much greater in one square than in another; and each should pay only for its own. But the appellant seeks to make those in one square on Overhill street, where the work was light, pay for the street in another square on Overhill street, where the work was heavy. (Lucas' Charters, page 14.)

2. The charter contemplates that there shall be a separate contract as to each square; that is, that the contract price for the street in that square shall be apportioned on those in that square only. (Lexington v. McQuillan's Heirs, 9 Dana, 513.)

3. The appellant, having settled with Weber & Schillinger by taking their note with interest, and giving them a receipt in full, he can not be allowed to afterwards reapportion the work, so as to bring in an additional claim against them. (7 Ky. Law Reporter, 684.)

CHIEF JUSTICE LEWIS DELIVERED THE OPINION OF THE COURT.

This action was instituted by appellant, May 1876, against appellees and others for recovery and enforcement of a statutory lien to satisfy amounts assessed, and for which apportionment warrants had been issued, to pay for improvement of Overhill from Broadway to

Underhill streets, in the city of Louisville; but the judgment rendered in 1879 for appellant was, in 1884, reversed by this court, upon the principal ground, as appears from the opinion delivered, it was not alleged in the petition that there was a publication of the ordinance of the city council under which the improvement was made.   Upon return of the case an amended petition was filed, containing all the averments required by law in order to maintain the action, which seem to be supported by the evidence; but by the judgment now appealed from the action was dismissed as to all the appellees, though the reasons therefor, as appears from the opinion of the chancellor, except the main one, involving right of the city council to direct the improvement and assessment in the mode it was done, are not applicable to all the parties alike.

The three streets, Broadway running nearly east and west, Underhill nearly north-east and south-west, and Baxter avenue nearly north-west and south-east, form about an equilateral triangle, which is cut by Overhill extending parallel with Baxter avenue from Broadway to Underhill, leaving the land west of Overhill, though it form a triangle, in the meaning of the city charter as heretofore interpreted by this court, a square for purpose of such improvement; but the land east of it, quadrilateral in form, is cut by three short streets, Rogers, Fetter and Wilson, extending parallel with each other from Baxter avenue to Overhill, and perpendicular to both, but parallel to neither Broadway nor Underhill, whereby there exist within the area mentioned four squares, instead of one, bounded by public streets; and thus arises the question, whether

to pay the cost of the improvement done under one ordinance and one contract, the lots lying east of and adjacent to Overhill can be assessed, and the lien upon them exists as if there was, in fact, but a single square on that side.

This question affects directly only appellees Preston, Brown, and Webber & Schillinger, whose lots are east, but the chancellor seems to have regarded those owning lots west of Overhill street, though all are in the same square, as equally affected, and the determination of it depends upon the proper construction of "An act to amend the charter of the city of Louisville," approved February 20, 1873, which is as follows:

"§ 1. That in lieu of section 12 of the charter * * the following law shall prevail concerning public ways: First, public ways as used in this charter shall mean all public streets, * * * and shall be under the exclusive management and control of said city, with power to improve them by original construction and reconstruction, as may be prescribed by ordinance. Improvements as applied to public ways shall mean all work and material used upon them in the construction and reconstruction thereof, and shall be made and done as may be prescribed by either ordinance or contract approved by the general council.

"§ 2. When the improvement is the original construction of any street, * * * such improvement shall be made at the exclusive cost of the owners of lots in each fourth of a square, to be equally apportioned by the general council according to the number of square feet owned by them respectively, except

that corner lots—say thirty feet front, and running back as may be prescribed by ordinance—shall pay twenty-five per cent. more than others for said improvements.    Each subdivision of territory, bounded on all sides by principal streets, shall be deemed a square.   When the territory contiguous to any public way is not defined into squares by public streets, the ordinance providing for the improvement of such public way shall state the depth on both sides fronting said improvement to be assessed for the cost of making the same, according to the number of square feet owned by the parties respectively within the depth, as set out in the ordinance.  A lien shall exist for the cost of original improvement of public ways * * for the apportionment and interest thereon against the respective lots, and payments may be enforced as other city assessments for taxes upon the property bound therefor, or by proceedings in court, and no error in the proceedings of the general council shall exempt from payment after the work has been done, as required by either the ordinance or the contract ; but the general council, or the courts in which suits may be pending, shall make all corrections, rules and orders to do justice to all parties concerned ; and, in no event, shall the city be liable for such improvement without having the right to enforce it against the property receiving the benefit thereof, so that no one shall be assessed or charged with the improvement of public ways, except those binding on the fourth of a square, of which his lot forms a part apportioned as aforesaid."

No personal judgment could be recovered by appel-

lant against any one of the owners of lots assessed; nor, as expressly provided, could the city be made liable, and, consequently, the effect of the judgment is to leave him without full compensation, although the improvement has been made without any objection by, or attempt of, appellees to enjoin it, and they have ever since enjoyed the benefit of it.

The ground upon which the judgment is attempted by counsel to be sustained is, that each separate square is, under the charter, chargeable with cost of only such improvement as may be done opposite to it, and that property in different, though adjoining squares, can not be included in one and the same assessment and apportionment. The leading purpose of the charter in respect to improvement of public ways, is to charge property immediately benefited by an improvement, with the cost of it, whereby to secure approximate equality and uniformity; and to accomplish that purpose, the plan was adopted of requiring each improvement "made at the exclusive cost of owners of lots in each fourth of a square." But it was not intended, nor would it be just or practicable, to apply that rule in a case like this, where the result would be to either place the burden entirely upon property situated on one side of a street, or else prevent any improvement being made.

To make assessment upon those lots west of Overhill street legal, or the improvement of practical advantage, it was necessary for such improvement to extend from Broadway to Underhill street, the whole length of the square in which they are situated. But to rigidly apply the rule of apportioning the cost to

these lots east of Overhill street, would enable the owners of them to escape contribution entirely, although equally and especially benefited by extension of the improvement of Overhill street, the entire distance from Broadway to Underhill, whereby an outlet by an improved way was afforded to them.

In our opinion, all those whose property is situated on Overhill street, as well those east as those west, are liable to assessment for the improvement, for, as the court in which this action was instituted was empowered to make all "corrections, rules and orders to do justice to all parties concerned," we do not perceive how they have been prejudiced by being required to pay a fair proportion of the cost, and it was error to dismiss the proceeding.

2. It appears that soon after the work was done, and apportionment of cost made by the city engineer, appellant applied to appellees, Webber & Schillinger, for payment of the amount assessed against them, and they then executed to him a note therefor, due in three months, receiving at the same time a receipt from him for the amount then appearing to be due; but subsequently it was ascertained by another and corrected assessment, which is not disputed or controverted, that they, in fact, owed to appellant, as their just share of the cost of improving the street, ―――― dollars more, which he, in this action, seeks to recover by enforcing a lien on their lots. As a defense, they plead and rely on the payment mentioned as an accord and satisfaction of the entire amount assessed against them.

It seems to us the payment and acceptance of the

amount first assessed against appellees can not be regarded as an accord and satisfaction. To sustain such plea there must be shown some advantage to the creditor, arising not from the mere prompt payment of a debt due and undisputed, but growing out of the fact there is some uncertainty or contest about the right to payment, in whole or part, or some contingency upon which such right exists. It was of no benefit or advantage, in legal contemplation, for appellees to pay the assessment, for appellant had the right to it, and it was their duty to pay ; nor, as is well settled, was the payment to and acceptance by appellant, of what then appeared to be the whole amount due, a satisfaction of what was afterwards ascertained by the engineer to be an additional amount, for it was not then known to, or in contemplation of, either party, and, consequently, there could not have been, in respect to it, either accord or satisfaction.

3. Appellee, John W. Barr, was not made a party by the original petition, either in person or as trustee, of Pope Rogers, but subsequently an amended petition was filed, making him a party; but this court, in the former opinion, decided no cause of action was stated, and no summons on the second amended petition was executed, and, consequently, the judgment was held, for that reason alone, reversible as to Barr. Upon the return of the case another amended petition was filed against said Barr, and also against appellee, the Fidelity Trust and Safety Vault Company, his successor as trustee of said Pope Rogers; but as more than five years had then elapsed since the cause of action accrued, the chancellor properly sustained the

plea of limitation, and dismissed the action as to them, and his judgment to that extent is affirmed; but as to all the other appellees the judgment is reversed, and cause remanded for further proceedings consistent with this opinion.