WILLIAM N. COSGROVE *vs.* ELIHU M. BENNETT.

July 29, 1884.

Contract to Supply Article for Particular Use—Implied Warranty.—
Where a chattel is to be made or supplied to the order of the purchaser, it is the general rule that there is an implied warranty that it shall be fit for the purpose intended. But where the article ordered and agreed to be furnished is to be of a particular design, pattern, or model, well defined and understood between the parties, and the article made and delivered in pursuance of the contract conforms to such design or model, there is no such warranty implied, but only that it should be of good materials and workmanship.

Same—Stipulation as to Capacity of Mill.—C. contracted to manufacture and deliver to B. "one of the Cosgrove Cascade Roller Mills; machine to have capacity of one hundred barrels in twenty-four hours," etc. *Held*, that the stipulation as to the capacity of the mill amounted to an express warranty, and that such contract of warranty was not satisfied by delivering a machine of a certain size or description, if there proved to be such inherent defects in the mill as to prevent its successful operation, so that ordinarily under proper management it could not turn out the stipulated amount of flour.

Same—Receipt and Retention of Mill—Waiver.—The receipt and retention by defendant of a mill otherwise answering the description in the contract, was not a waiver of his right to sue upon the warranty, on a subsequent discovery of its breach.

Appeal by defendant from an order of the district court for Rice county, *Buckham*, J., presiding, refusing a new trial after a trial by the court without a jury.

*Kellogg & Eaton* and *Chas. C. Willson*, for appellant.

*Geo. N. Baxter*, for respondent.

VANDERBURGH, J.   This action was brought to recover the unpaid balance of the purchase price of a certain "roller mill," for the manufacture of flour, furnished to defendant upon his order as follows:

"FARIBAULT, MINN., June 10, 1882.

"I, the undersigned, do hereby order from W. N. Cosgrove one of the Cosgrove Cascade Roller Mills, to be constructed for my mill in Bismarck, D. T.   Machine to have capacity of one hundred barrels per twenty-four hours; to have five pairs of corrugated rolls.   Machine to be constructed in first-class shape, and to be ready to ship in ninety days from the date of order, or sooner if possible.   Price to be twenty-two hundred dollars; five hundred dollars to be paid in ten days from date of order, and six hundred dollars to be paid when machine ready to ship; the remaining eleven hundred dollars to be paid when machine ready to start."

A counterpart of this order, embracing the same terms and conditions, was at the same time executed by plaintiff.   It was found by the court, substantially, that at the date of the contract plaintiff had never manufactured any of these mills, nor was there any in use, but he had constructed a model of the separating device connected therewith, which constituted the chief improvement patented by him, by means of which he undertook to illustrate its practical operation. After a personal examination of the model and witnessing its operation, and after hearing plaintiff's description and explanation of the machine and its design, defendant determined to order one for his own use, and accordingly entered into the above contract therefor; and thereupon the plaintiff manufactured and delivered to him the machine in controversy, in all respects in conformity with the model, design, and specifications exhibited to the defendant.   The same was also well made and of good materials, and the defendant thereupon

caused it to be properly set up and put in operation. The defence is that the mill was faulty in design, and was unfit for the practical use for which it was intended; that it failed to properly separate the "middlings," and the sieves clogged and failed to properly pass and deliver over them the crushed grain; and that the capacity thereof did not exceed 35 barrels in 24 hours.

1. The defendant insists that a warranty is, under the circumstances, to be implied, that the mill ordered should be reasonably fit for the business for which it was intended. To this we do not agree. It is true, as found by the court, that he was influenced by the opinions and recommendations of the plaintiff, as well as by his own personal examination of the model and its operation, but, nevertheless, the contract called for a mill of this particular pattern and design, and so far the contract was satisfied by the article delivered. If he desired a further protection or guaranty in respect to the character or success of its practical operation, he should have seen to it that the proper stipulations were inserted in the contract. The general rule is stated to be that, when an article is ordered to be manufactured for a particular use or purpose, there is an implied warranty that it is to be reasonably fit for such use or purpose. But where, as in this case, the article ordered was to be of a particular design or pattern, well defined and understood between the parties, and the article made and delivered in pursuance of the contract conforms to the pattern or model, there is no warranty implied further than it should be of good workmanship and material. *Cunningham* v. *Hall,* 4 Allen, 268, 274; *Mason* v. *Chappell,* 15 Grat. 586; *Chanter* v. *Hopkins,* 4 M. & W. 399; *Prideaux* v. *Bunnett,* 1 C. B. (N. S.) 613. We may therefore dismiss this question.

2. The defendant also contends that the stipulation or clause in the contract, providing that the mill should have a given capacity, amounts to an express warranty, of which he alleges a breach, and he accordingly sets up a claim of damages therefor. We are of the opinion that the clause is not merely descriptive of the kind or size of the machine ordered, but is to be construed as a warranty of its capacity. The meaning is that the parties understood and agreed that the mill to be furnished should be capable of producing the stip-

ulated amount of flour per day, under proper conditions and management.

3. The court seems to have determined the case in plaintiff's favor on the ground that defendant's receipt and retention of the machine constituted an acceptance thereof as satisfying the terms of the contract, and were a waiver of strict performance.    The express warranty distinguishes this case from *Haase* v. *Nonnemacher*, 21 Minn. 486. Here there is a written contract obligating the parties to do certain things, and binding upon both.    The receipt of a mill otherwise answering the description in the contract was not a waiver of defendant's right to sue upon the warranty, on a subsequent discovery of its breach.    *Polhemus* v. *Heiman*, 45 Cal. 573; *Mandel* v. *Buttles*, 21 Minn. 391; *Scott* v. *Raymond*, 31 Minn. 437.

4. Was there a breach of such warranty? The findings of the court are not very explicit on this question, but taken together are, we think, sufficient to show that there was.    The court finds "that the capacity of the mill was over 100 barrels in twenty-four hours when first put in operation, but, during most of the time it was actually in use under defendant's management, such capacity did not exceed thirty-five barrels in twenty-four hours."    But the court further finds that, "after being used a short time, it failed to do good work, and proved faulty and defective, in that the sieves in the stationary separators clogged, and failed to properly separate the middlings, and failed to feed the crushed wheat in an even manner to the successive rollers, whereby the same became choked and at times stopped;" and it is further found "that such machinery was faulty in plan and design, and incapable of being made to do good work, except under very favorable conditions," and was practically unfit for manufacturing flour.    This conclusion is borne out by evidence in the case, which clearly tends to show that the intrinsic defects in the design and practical operation of the mill, referred to, directly affected its capacity, as well as the quality of the flour manufactured.    It was not enough that the machine was of a certain size or description, or that, when new and clean, or under specially favorable circumstances, it temporarily fulfilled the conditions of the agreement, if there were such inherent defects in it as to prevent its successful operation, so that,

ordinarily, under proper management, it could not turn out the stipulated amount of flour.    For these reasons we think there must be a new trial.

Order reversed.