Cooper v. Nevin.

CASE 12—PETITION EQUITY—APRIL 3.

# Cooper v. Nevin.

APPEAL FROM LOUISVILLE LAW AND EQUITY COURT.

| | |
|---|---|
| 90 | 85 |
| 97 | 361 |
| 90 | 85 |
| 106 | 734 |
| 90 | 85 |
| 107 | 593 |
| 90 | 85 |
| 117 | 789 |
| 90 | 85 |
| 123 | 172 |
| 90 | 85 |
| 125 | 504 |

1. ASSESSMENTS FOR STREET IMPROVEMENTS.—In assessing property for the cost of street improvements in the city of Louisville, the council has no right to define the taxing district, if the territory contiguous to the improved street is defined into squares. The charter fixes the district in such cases.

2. SAME.—Where the territory on one side of the improved street has been defined into ordinary squares, the territory on the other side, although it has, in fact, not been thus subdivided, will, if bounded by principal streets, be treated as if the cross streets at right-angles to the improved street had been extended through the territory on that side; and although the distance to the next parallel street may be greater than the depth of an ordinary square, yet, if it is apparent that the distance is not great enough to admit of the territory being subdivided by another parallel street, the divisions made by the imaginary extensions of the cross streets will be treated as squares within the meaning of the charter, and the taxing district extended half way to the parallel street; and property within one of these squares can not be taxed to pay the cost of improving the streets in another square, the cost of the improvement being greater in the one square than in the other. The district to be taxed in such a case is defined by the charter.

In this case the distance to the next parallel street on that side of the improved street which has not been subdivided is six hundred and thirty feet. Two cross streets which divide the territory on the other side of the street have not been extended through this territory. *Held*—That this area should be treated as if divided into squares corresponding to the squares on the opposite side of the street, except as to depth, and the lots taxed to the depth of three hundred and fifteen feet, that being half way back to the next street; and property in one of these squares should not be required to contribute to pay the cost of the improvement in the other.

3. SAME.—The work having been completed, and the contract complied with, the lot-owner can not be relieved from payment by reason of an error of the council in the apportionment of the burden. There may be a reapportionment upon a proper basis.

JOHN BARRET AND JOHN STITES FOR APPELLANT.

1. In taxing for local improvements the square is the taxing district,

and each square must pay for its contiguous street. (Schmelz v. Giles, 12 Bush, 491; McQuillan v. City of Lexington, 9 Dana, 513; Craycroft v. Selvage, 10 Bush; Johnston v. Ferrill, 8 Ky. Law Rep., 216.)

Any territory bounded on all sides by principal streets is a square, and the squares may vary in depth or length without losing their character as squares. (Bradley v. McAtee, 7 Bush, 667; Broadway Baptist Church v. McAtee, 8 Bush, 508; Thomasson v. Kendall, 2 Ky. Law. Rep., 422.)

2. The assessment on the square on which appellant's lot is situated, from Twenty-fifth to Twenty-sixth street, is to a depth of two hundred and ten feet, while on the square from Twenty-fourth to Twenty-fifth street it is to a depth of only two hundred feet, which makes the assessment void. (Preston v. Roberts, 12 Bush, 570; Redd v. Loeser, 14 Bush, 18.)

3. If the territory on the north side of the alleged improvement is *not* defined into squares, the ordinance directing the improvement is void in that it does not fix the eastern boundary of the alleged tax district. If the territory on the north side of the alleged improvement *is* defined into squares, the assessment is irregular in that it does not extend to the center of the square.

4. Notice should have been given under the act of March 24, 1882, which was the statute in force, and not under the act of February 20, 1873; but the notice being given under the act of February 20, 1873, the inspection should have been by the city engineer, as required by that act, and not by an assistant. (Harris v. Zable, Superior Court, 5 Ky. Law Rep., 114.)

5. As the ordinance was not passed by both boards, as required by the act of March 24, 1882, it is void.

6. The engineer has no legislative power to fill up an omission of the council to do its duty, and define the tax district where the charter definition of a tax district by squares bounded by principal streets fails. (Joyes v. Hyde, &c., 4 Bush, 464.)

LANE & BURNETT for appellee.

1. Under the act of February, 1873, the city engineer was required to make the final inspection, and determine whether the improvement had been completed in accordance with the ordinance; but by the acts of February 11, 1882, and March 24, 1882, the same judicial power is vested in the assistant or deputy as is possessed by the city engineer.

2. The act of March 24, 1882, did not operate to annul the proceedings of the general council had prior to that date.

The re-enactment of an existing law is not to be construed as a repealing act. (Gen. Stats., chap. 21, sec. 23; Dillon on Mun. Corp.,

Cooper v. Nevin.

secs. 52, 53; State v. Mobile, 24 Ala., 706; Sedgwick on Const. and
Stat. Construction, page 95, note.)

3. The territory north of Bank street, and contiguous to the improvement
in question, is territory that is not defined into squares by principal
streets. (Rupert v. Caldwell, 10 Bush, 179.)

4. When the contiguous territory on both sides of the improved street
is defined into squares by principal streets, the quarters of squares
binding on such public way constitute a tax district; but where the
contiguous territory is not thus defined on either side, or is defined on
only one side, it is necessary for the general council to fix a tax or
assessment district to be charged with the cost of the improvement.
In either case the unit of apportionment is the square foot, and the
tax must be equal throughout the entire district. (Cooley's Const.
Lim., 495; Schmelz v. Giles, 12 Bush, 495; Broadway v. McAtee,
11 Bush, 516; Caldwell v. Rupert, 10 Bush, 179; Craycroft v. Selvage,
10 Bush, 696; Dulaney v. Bowman, MS. Op., Jan. 29, 1875.)

5. Where the territory contiguous to a public way has been defined into
squares by principal streets on neither, or but upon one side, the
general council has *no power* to extend the tax limits on one side
to any greater distance than on the other, except in cases where there
are parallel streets already dedicated, *and not beyond what might be
reasonably regarded as the distance of a square from the street to be
improved;* but whether the parallel streets are beyond what might be
reasonably regarded as the distance of a square from the street to
be improved, is a question of fact to be determined by the general
council. (Preston v. Roberts, 12 Bush, 586; Nevin v. Roach, 86
Ky., 492.)

And the question being one of fact to be acted on primarily by
the general council before the limits can be fixed, its action is con-
clusive in the absence of collusion or fraud. (Pearson v. Zable. 78
Ky., 173; Cooley on Taxation, 110, 111, 112, 550; Shelby v. Shelby,
5 Bush, 225; Spencer v. Merchant, 125 U. S., 345; Cooley on Const.
Limit., 38; Sage v. Laurain, 19 Mich., 141; Cooley on Taxation,
550; State v. Jersey, 5 Dutcher, 450; Waterbury v. Laredo, 50
Texas, 523; 3 Denio, 120; 1 Wis., 520; 19 Wend., 59.)

6. The contract having been literally complied with by appellee, the late
owner can not be relieved from payment by an error of the council.
(Gibson v. O'Brien, 9 Ky. Law Rep., 639; Craycroft v. Selvage, 10
Bush, 701–2.)

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

The ordinance in question was passed in accordance
with the provisions of the city charter, and the only
trouble arises from the manner in which the burden

of payment was imposed on the property bordering on the improvement. Each subdivision of territory, bounded on all sides by principal streets, is ordinarily deemed a square, and such is the provision of the city charter; still the territory between the streets may be of such dimensions, covering a large area, as would show not only the necessity but the certainty that such an area must at some time be subdivided into squares for public convenience, and, therefore, the city council, in ordering the improvement, will only extend the taxing district as far into the territory that is liable to this subdivision as that taxed on the opposite side of the improvement, where the territory has already been defined by squares surrounded by principal streets as contemplated by the charter. The charter provides that "when the territory contiguous to any public way is not defined into squares by principal streets, the ordinance providing for the improvement of such public way shall state the depths on both sides fronting said improvement to be assessed for the cost of making the same, according to the number of square feet owned by the parties, respectively, within the depth as set out in the ordinance."

The improvement in this case was the construction of a carriage way on Bank street thirty-six feet in width, from the centre of Twenty-fourth street to the east line of Twenty-sixth street. The work was completed by the appellee and accepted by the city.

The court below gave a judgment against the appellant for his proportion of the cost of the entire improvement, ascertaining the contract price, and making each property-holder pay to the extent of the property owned that bordered on the improvement. This was error, if the appellant is right in his contention that the property taxed was included within squares as defined by the charter, and not susceptible of subdivision. Bank street is bounded on the

north by Portland avenue; on the south by St. Xavier street; on the west by Twenty-fourth street, and on the east by Twenty-sixth street. Twenty-fifth street divides the territory between Twenty-fourth and Twenty-sixth, making two well-defined squares; and for a better illustration of the location of the property a diagram of the territory is hereto appended:

It will be seen from this map that the territory between Bank street and Portland avenue, extending from Twenty-sixth street to Twenty-first street, embraces thirty-two acres of land, and this area being surrounded by principal streets, but not subdivided, the question presented is, does the charter in such a case determine the territory to be taxed and the mode of assessment after the passage of a valid ordinance ordering the improvement, or is the entire question left to the city council? When not defined into squares by principal streets, the charter requires that the ordinance providing for the improvement "shall state the depths on both sides fronting said improvement, to be assessed for the cost of making the same according to the number of square feet owned by the parties, respectively, within the depth as set out in the ordinance."

The city council, regarding the territory north of Bank street, and between that street and Portland avenue, as not being within a square, fixed the depth on each side of the improvement to be assessed at a distance of two hundred and ten feet, thus taxing the area within the two defined squares bordering on the improvement, and south of Bank street, as directed or required by the charter, and running the same distance with the territory that had not been subdivided by the extension of Twenty-fourth, Twenty-fifth and Twenty-sixth streets. The distance from Bank street to Portland avenue is six hundred and forty feet, and the distance from Twenty-sixth street on the east to Twenty-first street on the west exceeds two thousand feet; from Bank street south to St.

Xavier street is a distance of about four hundred and twenty feet, and this territory is divided by Twenty-fifth street, leaving a square between Twenty-fifth and Twenty-fourth streets on the west, and a square between Twenty-fifth and Twenty-sixth streets on the east, and these two squares bordering on Bank street, the contiguous area is assessed to the depth of two hundred and ten feet on each square. The appellant's lot lies within the square between Twenty-fith and Twenty-sixth streets, and the testimony, uncontradicted, shows that the surface of the street bordering on his lot is almost level with the adjoining land, with scarcely any excavation or cut required, while on the square between Twenty-fourth and Twenty-fifth streets there is an average cut of three and one-half feet, or nearly so, and the cost of the excavation is fixed by the engineer at one thousand eight hundred dollars, when but little, if any, was required fronting the square where appellant's property is located; still the latter was taxed to pay for this excavation, or the work done on a square entirely distinct from his lot. This mode of assessment could not have been contemplated by the charter in a case where the area on the one side of the improvement to be made is surrounded by principal streets, and a mere extension of intersecting streets from the opposite side, where the territory is already defined into squares, would produce that equality of burden sought to be obtained by the provisions of the charter. If, therefore, Twenty-fourth, Twenty-fifth and Twenty-sixth streets are extended as the dotted lines on the map show, from Bank street to Portland avenue, you have

the territory that must be taxed in order to produce equality in taxation, and at the same time carry out the plain meaning and spirit of the charter. The charter itself fixes the mode of assessment and the extent of the area to be taxed in a case like this.

In Caldwell v. Rupert, 10 Bush, 179, the territory was so large and so located as to render it certain that a subdivision would subsequently be made, so as to form squares approximating those already laid off in the city. In such a case the council is to determine the extent of the area to be taxed, having the same depth on each side of the improvement.

As said by this court in Schmelz v. Giles, 12 Bush, 491, the purpose is to charge the cost of the improvement on the property to be benefited by it. It is true that when the extension of the parallel streets is made to Portland avenue, the distance from Bank street to the former street is six hundred and forty feet, making the one-half to be taxed three hundred and twenty feet, while from Bank street, on the opposite side, south to St. Xavier street, it is only four hundred and twenty feet, making the one-half to be taxed two hundred and ten feet. So you would assess three hundred and fifteen feet on the one side and two hundred and ten feet on the other. The squares, it is true, would not be equal, but the area to be taxed is to the centre line, and the property being benefited, and the tax by the square foot, the inequality of the area is not such as to make it open to constitutional objection. As said in Schmelz v. Giles, "those having more square feet of ground will receive a corresponding increase of benefits." The

squares in a city are not all of the same shape or dimensions, and the fact that one square is larger than another can make no difference in the event you can approximate equality in fixing the burden.

In the case of Stengel v. Preston, &c., 89 Ky., 616, decided at the present term, the peculiar formation of the territory bordering on Overhill street necessitated the apportionment according to the extent of the area bordering on the improvement. The territory between Overhill street and Broadway had not been subdivided into squares, and no imaginary extension of Wilson, Fetter and Rogers streets, through the ill-shaped territory beyond Overhill street, so as to produce equality in the burden. The council, therefore, had to fix the depth for taxation on this territory, and then, by reason of the excessive burden caused by excavation, and having complete power over the subject-matter, apportioned the cost in proportion to the number of square feet owned by each proprietor, and for the additional reason that benefits flowed alike to all. The court did not mean to hold in that opinion that a square defined by principal streets, such as contemplated by the charter, or the property thereon, could be taxed to improve another and distinct square, and it is only in cases where the contiguous property on the opposite side of the street is not defined into such squares as gives to the city council the power to make such an apportionment. In the first-named case the charter fixes the mode of assessment, and in the last-named case it is with the city council. The court was discussing the case before it, and with the right of the council to designate the property to be

taxed, and to judge of the burdens to be imposed, thought proper, by reason of benefits received, and to equalize the burden, to make each lot-owner contribute.

It is not argued, nor will it be contended, that this territory between Bank street and Portland avenue will be subdivided by principal streets, running from east to west—that is, from Twenty-sixth to Twenty-first street. All the territory requires is to extend the streets running north and south from Bank street to Portland avenue as they are found on the map of the city, and you have the taxing district. On the plan adopted by the city council, they have fixed the depth at two hundred and ten feet. Now, when you come to improve Portland avenue, you can extend the area only to the same depth—two hundred and ten feet—and, therefore, you have lying between the area that has been taxed a space of two hundred and ten feet that escapes all taxation for such improvements. The fact that there is a long strip of land between these two principal streets—Portland avenue and Bank street—with no intersecting streets, affords no reason for disturbing the provision of the city charter imposing on the property bordering on the square the burden of improving it. If the space between Bank street and Portland avenue was as great as that between Twenty-sixth and Twenty-first streets, then it would not only be within the power of the council, but their duty, to fix the area to be taxed. No such question arises in this case, and the charter itself having fixed the extent the property is to be taxed, it is plain the court below erred in so apportioning the cost as to make the appellant's prop-

Cooper v. Nevin.

erty pay for improving the street bordering upon a different square.

The charter amendment, approved on the 24th of March, 1882, provides that "no error in the proceedings of the general council shall exempt from payment after the work has been done as required by either the ordinance or contract." Under this provision, the work having been completed and the contract complied with, we perceive no reason, as this case must be reversed, why the appellee, if he desires it, may not have a reapportionment of the burden as indicated in the opinion, and the appellant required to pay in the same manner and in the same proportion as if Twenty-sixth, Twenty-fifth and Twenty-fourth streets extended north to Portland avenue, the taxing area to be fixed at the centre of the square —that is, instead of two hundred and ten, it should be three hundred and fifteen feet from Bank street. This reaches the center between Bank street and Portland avenue.

In Loeser v. Redd, 14 Bush, 18, this court said: "Where the property contiguous to the improvement is bounded by principal streets, and lies within a square, all that is left to be done under the law in such cases is to determine, by calculation, that equality in the apportionment as directed by the charter, the law having designated the property to be taxed." If the judgment below is followed, it would result in making the appellant, whose property lies within a square, pay for improving the street contiguous to and bordering on an entirely different square; and not only so, but would, in effect, exempt a space of

two hundred and ten feet of ground lying between
Bank street and Portland avenue from any taxation
for street improvements.

The judgment below is reversed, and remanded for
proceedings consistent with this opinion.