HERMAN FELSENTHAL *et al. vs.* CHARLES A. HAWKS *et al.*

Argued May 12, 1892.  Decided June 14, 1892.

**Contract Construed.**
> A stipulation in a certain contract *held* to be a warranty.

**A Merely Nominal Plaintiff Must Allow a Set-off Held by Defendant against the Party in Interest.**
> Where notes were discounted by the plaintiffs, bankers, and indorsed to them by the payees before maturity, but, after dishonor and protest, were paid by the indorsers, and thereafter held by the plaintiffs for collection against the defendants, makers; *held* that, in an action thereon brought by plaintiffs, the payees should be deemed the beneficial owners, so as to let in a set-off, in favor of the defendants, against them.

Appeal by plaintiffs Herman Felsenthal, Jacob Gross, and Adam Miller from an order of the District Court of Ramsey County, *Brill*, J., made September 11, 1891, denying their motion for a new trial.

Plaintiffs were partners in banking at Chicago, Ill.  The defendant Charles A. Hawks owned and operated a brickyard at River Falls, Wisconsin, and on February 14, 1889, bought of I. & M. Wolff & Coleman certain patent brick drying machinery to be used in his brickyard, and gave them $2,000 in cash and afterwards his three promissory notes in payment.  One of these notes fell due and was renewed August 6, 1889.  The defendant William B. Evans, at Hawks' request, signed the notes with him as surety for his accommodation.  I. & M. Wolff & Coleman indorsed the notes and had them discounted by the plaintiffs.  As these notes fell due they were presented for payment, but were not paid by the makers, and were protested, and notice was given the indorsers.  Thereupon I. & M. Wolff & Coleman gave plaintiffs their checks for the amount due on the notes, but left them with plaintiffs for collection.  They brought an action against the makers upon each note, but the three actions were consolidated and tried together.  When Hawks brought the brick drying machinery I. & M. Wolff & Coleman agreed with him in writing that "after a test of the apparatus shall be made, equal to 50,000 stiff mud

brick every twenty-four hours, with a continuous supply of live steam at sixty pounds pressure, without injury to the brick; in the event of failure of the dryer to dry the capacity specified, I. & M. Wolff & Coleman agree to refund all moneys paid thereon; title and ownership to remain with them until all payments are made."

The defendants answered that I. & M. Wolff & Coleman were the beneficial owners of the notes; and that the dryer could not be made to dry over 18,000 brick in twenty-four hours; and that the brick were cracked in drying and rendered worthless; that the machinery failed to dry the capacity specified, and was worthless. They claimed damages greater than the amount of the three notes. The defendants obtained a commission and took the testimony of plaintiffs at Chicago, Ill., and got from their books a copy of the bank account of I. & M. Wolff & Coleman with them. This account showed that I. & M. Wolff & Coleman, as indorsers, had in fact paid the plaintiffs the amount of the notes by their checks above mentioned. Hawks insured the property against fire. He and others formed a corporation, and he on July 1, 1889, conveyed to it the brick yard and this machinery. It was destroyed by fire July 11, 1889, and the insurance paid. Verdict for defendants.

*Ewing & Ewing, John D. O'Brien,* and *Eli B. Felsenthal,* for appellants.

Plaintiffs are the owners and holders of these three notes. The checks of I. & M. Wolff & Coleman were not payment but collateral security. To constitute payment, money must be delivered by the debtor to the creditor for the purpose of extinguishing the debt, and the creditor must receive it for the same purpose. The fact that the bankers have taken collateral security does not in any way affect their rights as against the maker. The bankers are under no obligation to the payee to resort to that security in preference to their personal remedy against the payee. Much less are they under any obligation to resort to the security as against the maker, who was in no way privy to the deposit for security. *Citizens' Bank* v. *Carson,* 32 Mo. 191; *Flournoy* v. *First Nat. Bank,* 79 Ga. 810; *People's Bank* v. *Legard,* 103 Pa. St. 309; *Martin* v. *Mechanics' Bank,* 6 Har. & J.

235; *Voss* v. *German American Bank*, 83 Ill. 599; *National Bank of Newburgh* v. *Smith*, 66 N. Y. 271.

The trial court's construction of the contract was, that this was a warranty; and this view of the case led him to charge the jury, that if there was a breach of the warranty, then the fact that Hawks had renewed his note after a breach occurred, and the fact that he had collected the insurance money for the property sold under the contract, made no difference as to his rights. This error led him to also say that if there was a substantial breach in the warranty, then the defendants would be entitled to offset Hawks' damages against the amount of the notes. The contract was not a warranty, it was a conditional sale. It provided, in express terms, that the title and ownership of the dry-house was to remain with I. & M. Wolff & Coleman until all payments were made. Contracts with a clause similar to this have uniformly been held to be, contracts of conditional sale, and that the payment of the money agreed to be paid is a condition precedent to the passing of the title. *Minneapolis Harvester Works* v. *Hally*, 27 Minn. 495; *Aultman & Co.* v. *Olson*, 43 Minn. 409; *McCormick Har. Mach. Co.* v. *Chesrown*, 33 Minn. 32; *Thompson* v. *Libby*, 35 Minn. 443; *Barrett* v. *Pritchard*, 2 Pick. 512.

The trial court said that I. & M. Wolff & Coleman were not to be paid, or if paid were to return, the consideration if the dry-houses did not fulfill the stipulation of the contract, whether the transaction was a conditional sale, or a sale with a warranty. This, we submit, is not wholly accurate. If the contract was one of warranty, there is no question of the right of the defendants to recover whatever they had paid; but if it was a conditional sale, and the defendants had by their acts, waived performance of the condition, they could not recover anything they had paid, and would now be obliged to pay the notes. The fact that Hawks sold the property to the corporation, collected the insurance, offered to sell a part of the property which was saved from the fire, to I. & M. Wolff & Coleman; and the fact that he paid the interest on the note which came due in August, and gave a renewal note for the same amount, knowing that it was to go into the hands of innocent parties to be discounted; his failure to make any claim or demand upon the payees to refund the money

which had been paid, or to reconstruct the brick-dryer; his failure to make any complaint of any kind, either to the plaintiffs or to the payees—all these facts admit of but one reasonable explanation. That explanation is found in the fact, that he had waived whatever conditions were contained in the contract, and knew that he was liable for the amount of the notes.

*Davis, Kellogg & Severance;* for respondents.

The plaintiffs are not *bona fide* holders of these notes so as to cut off any defense or counterclaim, but merely hold the title for the benefit of I. & M. Wolff & Coleman, who are the beneficial owners thereof. They paid these notes to the plaintiffs when they became due, and are now the owners, although the naked title remains in the plaintiffs, enabling them to maintain an action thereon. The plaintiffs are but the trustees for the benefit of I. & M. Wolff & Coleman. The amounts that they will receive on these notes will go to them and for their benefit. This being so, defendants are entitled to their set-off. *Farwell* v. *Tyler,* 5 Iowa, 535; *Cottle* v. *Cole,* 20 Iowa, 481; *Elmquist* v. *Markoe,* 45 Minn. 305; *Minnesota Thresher Mfg. Co.* v. *Heipler,* 49 Minn. 395; *Dresser* v. *Missouri, etc., Ry. Const. Co.,* 93 U. S. 92; *Roberts* v. *Hall,* 37 Conn. 205; *Roche* v. *Ladd,* 1 Allen, 436; *Randall* v. *Weld,* 86 Pa. St. 357.

The representations in this contract as to the capacity that this machine should have, and the agreement as to the damages in the event of a failure to dry the capacity, constituted a warranty that said machine would have the capacity stated. Where one party represents that a machine shall have a certain capacity, and the other party relies on this, this constitutes a warranty. *Cosgrove* v. *Bennett,* 32 Minn. 371; *Polhemus* v. *Heiman,* 45 Cal. 573; *Warder* v. *Bowen,* 31 Minn. 335; *Jack & Towner* v. *D. M. & Ft. D. R. Co.,* 53 Iowa, 399; *Bigelow* v. *Boxall,* 38 U. C. Q. B. 452; *White* v. *Miller,* 71 N. Y. 118; *Higgins* v. *Livermore,* 14 Mass. 106; *Rumsey* v. *Sargent,* 21 N. H. 397.

The renewal of a note is not a waiver of the breach of warranty; neither is it a waiver of the defense of want of consideration. *Osborne & Co.* v. *Marks,* 33 Minn. 56; *Aultman & Co.* v. *Wheeler,* 49 Iowa, 647;

*King* v. *Doane,* 139 U. S. 166; *Levan* v. *Wilten,* 135 Pa. St. 61; *Hooker* v. *Hubbard,* 102 Mass. 239.

The taking of the insurance was not a waiver because, although the title to the property was in I. & M. Wolff & Coleman, yet Hawks had an insurable interest and might insure that interest; and it does not appear in this case that he insured anything but that interest. *Holbrook* v. *St. Paul F. & M. Ins. Co.,* 25 Minn. 229; May, Insurance, 91.

VANDERBURGH, J. The plaintiffs, indorsees, seek to recover upon three promissory notes, one for $1,027.45, one for $2,000, and one for $1,612, made by defendants to I. & M. Wolff & Coleman, and by the latter transferred to the plaintiffs. The defendants contend that they have a defense or counterclaim against these notes, and the first question to be determined is whether the plaintiffs are *bona fide* holders thereof, so as to exclude such defense or counterclaim.

The plaintiffs are bankers doing business in Chicago, and have been in the habit of discounting notes for Wolff & Coleman; and, among others, they discounted the notes in suit, which were indorsed to them in the ordinary course of business, and the face value of the notes, less the discount, was placed to the credit of Wolff & Coleman. Conceding that they were *bona fide* holders before they became due, the question arises whether they continue to be so, in view of their subsequent transactions with Wolff & Coleman. When they became due they were protested, and the latter were charged as indorsers, and were bound to protect the plaintiffs, and, as defendants claim, they immediately took up the notes as the usage of the plaintiffs' bank required, but left them in plaintiffs' possession to enforce against the defendants, and that they have no further interest in them, than as collection agents for Wolff & Coleman. Whether Wolff & Coleman did so pay the notes after dishonor was the first question submitted to the jury by the court, and upon this issue we must presume that the jury found for the defendants. Is the evidence sufficient to justify this finding? In respect to the note made for $1,027, it became due on December 4, 1889. Wolff & Coleman then made their check in favor of plaintiffs for the amount due

thereon, including interest and protest fees, which was paid in due course of business out of funds of Wolff & Coleman, and marked "Paid" on the books of the bank. The legal presumption is that the check was made and paid to discharge the liability of the indorsers. This presumption was not overcome by the fact testified to by plaintiffs, that they retained the note for collection with the agreement to turn over to Wolff & Coleman the amount thereof when collected. It is obvious that the plaintiffs hold this note as the agents or trustees of the payees, and that they are not the beneficial owners thereof. As respects the other notes, the evidence discloses a somewhat different procedure, but we think it was fairly a question for the jury whether these notes were not taken up by Wolff & Coleman substantially in the same way as the note first mentioned, and held for the same purposes by plaintiffs. When they became due, the payees Wolff & Co. gave their check for the amount of each, with interest and protest fees. The checks, however, ran to H. Felsenthal, one of the plaintiffs, as "trustee," and were paid by Wolff & Co. in due course; that is to say, they were severally charged against their account with plaintiffs, and paid out of their funds in the bank. Each check on the day of its date was stamped "Paid" over the name of the plaintiffs' firm and the date. The books of the bank show that Wolff & Co. were charged with the amount of the notes when due in account, and credited with collections, and the balance struck in the one case in their favor, and the other against them, on each date, respectively. The evidence justifies the inference that any amount which might be subsequently realized or collected by plaintiffs on these notes would have to be credited to Wolff & Coleman, who are entitled to the proceeds thereof, and the jury might well find from the evidence on this branch of the case that the plaintiffs had no further interest in the notes than as trustees or collection agents of Wolff & Coleman. The question was left to the jury to find from the evidence whether the checks were given as security only, as plaintiffs claim, or whether it was the intention of the parties, as between themselves, (indorsees and indorsers,) to take up or pay the notes according to the usual custom of the plaintiffs' bank in respect to paper discounted by plaintiffs. The question was presented fairly

and clearly to the jury by the court in its general charge, so that there was no prejudicial error in refusing any of the instructions on the subject asked in plaintiffs' behalf.

2. We are next to consider the evidence tending to establish the counterclaim of defendants, which the jury have found to be at least equal to the amount due on the notes sued on.

The court below held that there was a breach of the warranty contained in the contract in pursuance of which the notes last mentioned were given. The defendants were engaged in the brickmaking business in Wisconsin, where they had a brickyard. Wolff & Coleman owned certain patents for a brick drying machine, and they agreed to sell to the defendants the right to use the same, and to furnish the heating apparatus and necessary iron material therefor, and to set up the same. The agreed price to be paid by the defendants was $6,000, and the contract stipulated that it should be paid, one third cash on arrival of iron material, say $2,000; one third in four months' note, $2,000, dated on completion of dryer; one third, six months' note, dated on completion of dryer. The contract also contained the following stipulations:

"After a test has been made equal to fifty thousand stiff mud brick every twenty-four hours, with a continuous supply of live steam, at 60 lb. pressure, without injury to brick, in the event of the failure of the dryer to dry the capacity specified, Wolff & Coleman agree to refund all moneys paid thereon."

"And it is further agreed that the title and ownership of the said dry house is to remain with Wolff & Coleman until all payments are made as per contract hereunto entered upon."

Obviously the last provision was inserted for the security of the grantor, so that, if the consideration for the dry house was not paid as agreed, the sellers might ultimately resume possession of the property. If, however, they do not avail themselves of this condition, and seek to recover on the notes, or if in the mean time part of the consideration has been paid, the question arises, what remedy or defense remains to the defendants in case the machines have proved unfit for the purpose for which they were purchased and furnished? The contract contained a stipulation, as defendants claim, in the

nature of a warranty that the drying machine had a certain capacity for drying brick. If it proved to be a failure in whole or in part for the purpose warranted, the defendants would be entitled to damages, which they might recover or set off to the amount of the consideration paid or sought to be enforced against them. The stipulation in respect to the drying capacity of the brick "dryer" must be held to be a warranty. To satisfy the warranty, it was necessary, subject to the conditions imposed, that its practical operation should be successful, and that the brick should be properly and suitably dried, so as to be merchantable to the amount specified each day. *Cosgrove* v. *Bennett,* 32 Minn. 373, (20 N. W. Rep. 359.) It is well settled that there may be an express warranty in an executory contract of this kind. *Scott* v. *Raymond,* 31 Minn. 437, (18 N. W. Rep. 274;) *Polhemus* v. *Heiman,* 45 Cal. 573. And the receipt, retention, and use of the property constitute no waiver of the right to recover for a breach of the warranty.

We have no doubt that the interpretation placed upon the contract by the trial court was the correct one. The defendants were therefore entitled to allege and prove the facts constituting their set-off in this suit, unless the plaintiffs are *bona fide* holders of the notes sued on. *Challiss* v. *Wylie,* 35 Kan. 509, (11 Pac. Rep. 438.)

It is not necessary to review the evidence in detail. It made a case for the jury on the question of the sufficiency and capacity of the drying machines, and the extent of the damages. On the cross-examination of the defendant Hawks, it appeared that one note was renewed so as to become due at the same time with the other notes, as he says, and after he had knowledge that the drying apparatus did not work well.

It also appeared that he had taken out an insurance policy upon it while it was in process of erection, and that it, with other property, was turned over to a corporation of which he was a stockholder, and that the property in question was subsequently destroyed by fire, and that he received between ten and eleven hundred dollars on account of the loss. These facts did not constitute an estoppel or conclusive bar to the defendants' claim for damages upon the contract of warranty. They were proper to be considered by the jury

in estimating the weight and value of the defendants' evidence, and upon the question of the nature and extent of the damages; and for these purposes they were properly admitted in evidence and submitted to the jury.

We discover no error in the charge of the court. All the material questions were fairly submitted to the jury, and the instructions asked by the defendants, in so far as they were not covered by the general charge, were properly refused. The principal points in the case clearly are (1) whether plaintiffs are *bona fide* holders and owners of the notes; (2) whether the stipulation in the contract referred to in respect to the capacity of the brick dryer is a warranty; and (3) the breach of the warranty and the damages. Upon these questions the terms of the contract and the evidence in the case are clearly sufficient to support the conclusions reached by the court and jury.

Order affirmed.

(Opinion published 52 N. W. Rep. 528.)