## MISSOURI, K. & T. RY. CO. v. CITY OF TULSA *et al.*

No. 4758.   Opinion Filed September 22, 1914.

Rehearing Denied January 9, 1915.

(145 Pac. 398.)

1.  MUNICIPAL CORPORATIONS—Powers—Special Assessments. Where a reasonable doubt as to the power of a city to impose a special assessment arises from the terms of its charter, the doubt must be resolved against the power of the city.

2.  "Owners of the Property Abutting Upon the Street." Section 6 of the charter of the city of Tulsa provides: "After excluding the cost of making any improvement between and two feet on each side of the track and rails of railroads, * * * and the entire cost of any improvements crossing the right of way of any railroad, which costs are to be * * * paid by the owners of such railroads, * * * the City * * * shall have the power to assess the whole cost of construction, * * * against the owners of the property abutting upon the street * * * upon which such improvements are to be constructed, and who are specially benefited thereby. * * *" Assuming that certain lots owned by the railroad company and within its right of way are within the taxing district and are benefited by the improvement, held, that the company are the "owners of the property abutting upon the street" improved within the meaning of the charter.

3.  SAME—Special Assessments—Taxing District—Property Included. Where the charter provides that the board of commissioners shall have the power to assess the whole cost of construction against the owners of the property abutting upon the street improved, who are benefited thereby, and in apportioning the cost of such improvement each quarter block shall be charged with its due proportion of paving, both the front and side streets on such block, together with the areas formed by street

Missouri, K. & T. Ry. Co. v. City of Tulsa et al.

intersections, which costs shall be apportioned among the lots or subdivisions of such quarter blocks according to the benefit to each lot or parcel, held, that the charter means, for the purpose of taxing for improvement of streets, the taxing district shall include all the property between lines drawn parallel with the street improved and back from it one-half block on each side.

4.    SAME—Taxing Districts—Property Included. Where the charter so provides and the commissioners, in fixing the taxing districts to pay for the improvement of a street running east and west, went back on the north side of the street one whole block, held, that the north half of the block so included was without the taxing district.

5.    SAME—Where, to pay for the improvement of a street running east and west in the city of Tulsa, it appears that blocks from 15 to 21, inclusive, abutting said street on the north, were abutted on the north by Fourth street, that said street was abutted on the north by corresponding blocks, also separately numbered on the city plat, and that said street, theretofore one of the city's system of streets, had been vacated and occupied by a railroad right of way, held, that said blocks and corresponding blocks did not thereby become one block; that said street, for assessment purposes, should have been treated as extended, and that the commissioners in fixing the taxing district to improve said street should have run the line north thereof parallel with said street and back from it one-half block, and not parallel with said street between blocks from 15 to 21, inclusive.

6.    SAME— Property  Benefited— Determination— Conclusiveness. Whether lots abutting on a street improvement and included in a railroad right of way are in fact benefited by the street improvement is a legislative question, and, having been settled by the legislative power of the city, is conclusive on us.

7.    SAME—District Boundaries. Where certain parcels of ground appear upon the official plat of a  city,  approved  by  the Secretary of the Interior, and are shown as lots and blocks, the platted boundary lines thereof must control in fixing the taxing district to improve a street upon which said blocks abut. The assessment must be limited to the blocks which actually abut on the street, and cannot be extended in corresponding blocks by reason of the fact that the street intervening between them has been vacated and included in the right of way of a railroad company.

8.    SAME—Assessment District—"Block"—"Square." A "block" or "square" is a portion of a city bounded on all sides by streets or avenues, but two blocks each bounded by a street, do not necessarily, when thrown together by the vacation of a street, constitute a single block to be included as such within an assessment district.

(Syllabus by the Court.)

Missouri, K. & T. Ry. Co. v. City of Tulsa et al.

*Error from District Court, Tulsa County;*

*L. M. Poe, Judge.*

Action by the Missouri, Kansas & Texas Railway Company against the City of Tulsa and another. Judgment for defendants, and plaintiff brings error. Reversed and remanded, with directions.

*Clifford L. Jackson, W. R. Allen* and *M. D. Green,* for plaintiff in error.

*John R. Ramsey,* City Atty., and *Bledsoe & Treadwell,* for defendants in error.

TURNER, J. On December 14, 1912, the Missouri, Kansas & Texas Railway Company, plaintiff in error, sued the city of Tulsa and Shelby-Downard Asphalt Company, defendants in error, in the district court of Tulsa county. The object of the suit was to enjoin the city from collecting an alleged illegal assessment sought to be imposed by the city on certain parcels of ground known as lots upon the official plat of said city, approved by the Secretary of the Interior on April 11, 1902, but which, at the time of the assessment sought to be restrained, were owned by plaintiff and included in its right of way, for the cost of paving Cameron street, and the intersection of Cincinnati avenue therewith. There was trial to the court, and judgment refusing to grant the temporary injunction prayed, and plaintiff brings the case here. According to said plat these lots (except as hereinafter mentioned) are within the north half of blocks 15 to 21, both inclusive, which abut north on Fourth street and south on Cameron street, both of which run east and west. Said blocks are separated by streets which intersect Fourth and Cameron streets at right angles, Cincinnati avenue intersecting said streets between block 20 and 21. Plaintiff's right of way not only runs east and west over the north half of these blocks and covers said lots, as stated, but includes Fourth street, vacated by the city

for right of way purposes, curving southward, crosses Cincinnati avenue. It is the contention of the city that, by the vacation of said street, each of the blocks from 15 to 21, both inclusive, and corresponding block north of said vacated street, became one block for assessment purposes and, as plaintiff's lots, although a part of its right of way, are within the south half of the blocks thus formed, they are liable to the special assessment taxed to pay the costs of improving said street. The city further contends that Cincinnati avenue, being a side street between blocks 20 and 21, the lots in those blocks covered by plaintiff's right of way, and within the quarter block abutting on Cameron street, are further liable to the assessment sought to be imposed for paving that avenue where it intersects Cameron street. The cost of improving said avenue over and across the plaintiff's right of way, having been paid, is not in this case.

Plaintiff, conceding the facts to be as assumed by the city, contends that it is not liable for any of the assessments sought to be imposed upon said lots, for the reason that the charter of the city does not authorize it. If there is any reasonable doubt as to the power of the city to impose this tax, the doubt must be resolved against the power of the city. It seems to the writer of this opinion that such doubt so arises. In the first paragraph of the syllabus, in the case of *In re Unger,* 22 Okla. 755, 98 Pac. 999, 132 Am. St. Rep. 670, we laid down the rule thus:

"A grant by the Legislature of taxing power to a municipal corporation is to be strictly construed, and any fairly reasonable doubt concerning the existence of such power is resolved by the courts against the corporation, and the power is denied. All acts beyond the scope of the power granted are void."

1 Page & Jones, Taxation by Assessment, sec. 229, reads:

"Furthermore, assessment proceedings are proceeding *in invitum,* and have for their ultimate object the taking of property from the individual owner without his consent. As is the case in

Form 13

all proceedings of a similar character, such as taxation, the stat-utes conferring the power to impose local assessments must be construed strictly. The intention of the Legislature to confer upon public corporations the power to levy local assessments must appear affirmatively. In case of fair and reasonable doubt as to the existence of such power, the presumption in construing the statute must be against its existence."

Turning to the charter, we find, after article 9, sec. 1, pro-vides for the declaratory ordinance and other preliminary steps for the letting of a contract for the purpose of grading, paving, etc., that section 4 provides:

"The cost of grading, paving, curbing and guttering any street, avenue or alley may be paid in part by the city or in part by the owners of property benefited by such improvement upon the property; * * * Provided, that when any person, firm, or corporation owns any railroad or street railroad or railroad switch of any kind on such street or alley or portion thereof ordered to be improved, such person, firm or corporation shall pay the whole costs of such improvement between the rails and tracks, and for two feet on either side of the rails of such rail-road or street railroad, and the city and abutting property owners shall be relieved of the part of the costs to be paid by such road. [Note here that the railroad, the city, and the abutting property owners are carefully distinguished. Which means that when the charter speaks of the property owners, it does not mean the rail-road.] The *pro rata* share of the cost of such improvement pay-able under the terms hereof by any railroad or street railroad or the owners thereof, together with all costs of collecting the same, shall be a special tax against, and secured by a lien upon the roadbed, ties, rails, fixtures, rights and franchises of such railroad or street railroad and the owners thereof, and whenever a con-tract shall be let for any such improvement, the board of commis-sioners shall levy a special tax upon the railroad, ties, rails, fix-tures, right and franchises of such railroad or street railroad, for the *pro rata* share due from such road, for improvement between their tracks and rails and two feet on each side thereof. * * * The lien provided for shall be a first and prior lien paramount to all incumbrances except taxes, upon the roadbed, ties, rails, fixtures, rights and franchises of the person, firm or corporation or company owning the railroad or street railroads aforesaid.

"Provided further, that when any street, avenue or alley is ordered graded, paved, curbed or guttered as herein provided, any person, firm or corporation having right of way or operating a railroad intersecting or crossing such street, avenue or alley so ordered improved, shall bear the entire expense of grading, paving, curbing and guttering and laying sidewalks over all across their tracks and right of way for the full width of such right of way."

Pertinent to this inquiry, section 6 provides:

"After excluding the costs of making any improvements between and two feet on each side of the track and rails of railroads or street railroads, and the entire cost of any improvement crossing the right of way of any railroad, which costs shall be assessed against, and wholly paid by the owners of such railroads, as herein provided, and subject to the terms hereof [that is, by imposing a lien, not upon the lots within its right of way but upon all the property of the railroad including its "right and franchises"] the city of Tulsa, acting by its board of commissioners, shall have the power to assess the whole cost of construction, reconstruction and repairing any sidewalks, curbing, guttering and paving any street, avenue or alley or making any other improvements ordered under the terms hereof, against the owners of property abutting upon the street, avenue or alley or part or section thereof upon which such improvements are to be constructed, and who are specially benefited thereby, and shall have the power to fix a lien against such property to secure the payment of the portion of such costs assessed against the owners of such property and in apportioning the costs of such improvements against the abutting property owners, each quarter block shall be charged with its due proportion of paving, both the front and side streets on such block, and the alley or alleys therein, together with the area formed by street intersection and alley crossing, which costs shall be apportioned among the lots or subdivisions of such quarter blocks, according to the benefit to each lot or parcel."

When section 6 of the charter says, as it does:

"After excluding the costs of making any improvements between and two feet on each side of the track or rails of railroads * * * and the entire cast of any improvements crossing the right of way * * * which costs are to be * * * paid by

the owners of such railroads, * * * the city * * * shall have power to assess the whole cost of construction * * * against the owners of property abutting upon the street upon which such improvements are constructed, and who are to be benefited thereby, and shall have the power to fix a lien against such property * * *"

—as plaintiff is the owner of the lots covered by its right of way and sought to be assessed, assuming them to be within the quarter blocks abutting on Cameron street and that such lots would be benefited thereby, it would seem that so much of plaintiff's right of way would be subject to this assessment, as contended by the city. But such is a doubtful implication. I say doubtful for the reason that, having expressly provided that plaintiff should pay the cost of the improvement when its road is on or crosses a street, I am uncertain whether the charter meant to include plaintiff in the word "owners," and thereby required of it further payments under different conditions, when it says that, after said payments are made, * * * the city * * * shall have power to assess the whole cost of construction * * * against the owners of property upon. * * * any street * * * who are benefited thereby." And this doubt is intensified when the charter is careful to distinguish between the parties in interest, that is, the city, the railroad, and abutting property owners, as we have seen. On the other hand, plaintiff, invoking the rule of strict construction, contends that when the charter expressly says that the city may impose the whole cost of an improvement and enforce a lien to a sale of its entire property when two conditions exist, i. e., when the railroad is on or crosses a street (neither of which it does here), such grant of power is a limitation on the power of the city to impose a lien and sell a part of the property under any other conditions. Or, in other words, that the power thus expressly granted to the city impliedly excludes a grant of power to the city to assess the property and impose a lien thereon under other and different conditions. It is my judgment this

contention is sound. 2 Lewis' Sutherland, Stat. Con. sec. 491, says.

"What is expressed is exclusive only when it is creative. * * * The maxim is applicable to a statutory provision which grants originally a power or right."

As here, for instance, where this charter expressly grants to the city, when those two conditions exist, the power to assess and impose a lien upon the entire property of the railroad including its right of way. The author continues:

"In such cases the power or right originates with the statute and exists only to the extent plainly granted."

Applying this rule, I am of opinion that, when the charter expressly created a right in the city to assess the entire cost of a public improvement on plaintiff's entire property, including its right of way, when its railroad is on or crosses a street, and says nothing about making plaintiff pay any part of those costs where its property abuts on a street to be improved, as here, the intent of the framers of the charter was to exclude any such idea, together with the idea that those costs, or any part thereof, could be assessed upon any part of the right of way and the same sold in satisfaction thereof. But, as no other member of the court agrees with me, in view of the fact that plaintiff in error is the "owner" in fee of these lots (*Gilbert et al. v. M., K. & T. Ry. Co. et al.*, 185 Fed. 102, 107 C. C. A. 320), I will, for the purposes of this case, concur in the view of the majority of the court that when the charter says:

"* * * After excluding the costs of making any improvements between and two feet on each side of the track or rails of railroads * * * and the entire cost of any improvements crossing the right of way * * * which costs are to be * * * paid by the owners of such railroads, * * * the city * * * shall have power to assess the whole costs of construction * * * against the owners of property abutting

upon any street * * * who are to be benefited thereby and shall have the power to fix a lien against such property."

—it means to include this company as the owner of the property in question, and hence plaintiff is liable to respond to this special assessment; that is, if the lots in controversy are within the quarter block abutting on Cameron street and are benefited by the improvement.

The charter provides that the board of commissioners shall have the power to assess the whole cost of this construction against the owners of the property abutting upon the street improved who are specially benefited thereby, and in apportioning the cost of such improvement each quarter block shall be charged with its proportion of the paving both of the front and side streets of each block, together with the area formed by street intersections, etc., which cost shall be apportioned among the lots or subdivisions of such quarter blocks according to the benefit of each lot or parcel. In other words, the charter means that, for the purpose of taxing for improving Cameron street, the taxing district shall include all the property between lines drawn parallel with that street and back from it one-half block on each side. No complaint is made as to the south line of this district but, in fixing the north line, the commissioners went back on the north side of that street one whole block and ran the line parallel with Cameron street between blocks 15 and 21, both inclusive, and their corresponding blocks north, and now contend that, by the vacation of Fourth street, which separated them, the two blocks became one, although they still remained separately numbered on the city plat. When we remember the definition of a "block" or "square" to be a portion of a city bounded on all sides by streets or avenues, it would seem, when two blocks, each bounded by a street, are thrown together in this manner, as both would then be bounded by streets, that both would be a single block. But the courts have held no so. The vacation and occupation of Fourth street by plaintiff's right of way had nothing to do with making any one

of these blocks, and its corresponding block north, one block. In fact had Fourth street never been opened at all between these blocks, being in line with the city's system of streets, as it is, for the purpose of assessment the assessing power of the city hould have conidered it as extended, and formed the taxing district accordingly. 1 Page & Jones on Taxation by Assessment in section 628, under the head "Assessment District Consisting of Blocks or Parts of Blocks," it is said:

"In doubtful cases the court has some discretion in determining what a square is. A tract of land which was the size of two ordinary city squares, which was surrounded by streets and opposite the middle of which on either side a street had been opened, but did not extend through the large tract in question, was treated as consisting of two squares by regarding such street as opened so as to extend through such tract."

In support of the text the learned author cites *Dumesnil v. Shanks,* 97 Ky. 354, 30 S. W. 654, 31 S. W. 864. Turning to that case, the facts were that an alley began in Park street, 200 feet east of Fourth street, and ran, parallel with that street, north 260 feet. The distance from Park avenue to Ormsby avenue was about 460 feet and from Fourth street to Sixth street 900 feet. The length of this territory from east to west was about double that of the squares on the north side of Armsby avenue, arising from the fact that Fifth street, which ran halfway between and parallel with Fourth and Sixth streets up to the north side of Ormsby avenue, stops there. On this state of facts it was held that the cost of improving the alley should be apportioned over the property lying east of a line corresponding with the center of Fifth street, if extended. In other words, that the territory the size of two blocks should be cut in two by an extension of Fifth street. Precisely this was held again in *Specht v. Barber Asphalt Paving Co.* (Ky.) 80 S. W. 1106. By ordinance approved by carriageway of Frankfort avenue was ordered improved 40 feet in width by grading, paving, etc., between two certain avenues, at the cost of the owners of the adjoining ground extending back

from the street 195 feet. The council proceeded upon the assumption that the land was not divided into squares by principal streets. After the contract had been let and the work performed and accepted and warrants duly issued, some of the property owners failing to pay, suit was brought on the ground that the ordinance was void because it fixed the taxing district at 195 feet instead of going back halfway to the next street. The next streets referred to were streets running parallel with Frankfort avnue. In holding that this should be done the court said:

"While the cross-streets on the north side of Frankfort avenue were not extended so as to intersect the cross-streets on the south side of Frankfort avenue because of the right of way of the Louisville & Nashville Railroad Company which intervened, for the purpose of assessment under the statute these cross-streets must be treated as extended. This was so held in Cooper v. Nevin, 90 Ky. 90, 13 S. W. 841."

In the case referred to the syllabus reads:

"Where the territory on one side of the improved street has been defined into ordinary squares, the territory on the other side, although it has, in fact, not been thus subdivided, will, if bounded by principal streets, be treated as if the cross-streets at right angles to the improved street had been extended through the territory on that side; and, although the distance to the next parallel street may be greater than the depth of an ordinary square, yet if it is apparent that the distance is not great enough to admit of the territory being subdivided by another parallel street, the divisions made by the imaginary extensions of the cross-streets will be treated as squares within the meaning of the charter, and the taxing district extended halfway to the parallel street; and property within one of these squares cannot be taxed to pay the cost of improving the streets in another square, the cost of the improvement being greater in the one square than in the other. The district to be taxed in such a case is defined by the charter.

"In this case the distance to the next parallel street on that side of the improved street which has not been subdivided is 630 feet. Two cross-streets which divide the territory on the other side of the street have not been extended through this territory.

Held, that this area should be treated as if divided into squares corresponding to the squares on the opposite side of the street, except as to depth, and the lots taxed to the depth of 315 feet, that being halfway back to the next street; and the property in one of these sqaures should not be required to contribute to pay the cost of the improvement in the other."

But in addition to what we have said there is another reason for holding that this method of forming the taxing district was error. Blocks 15 to 21, both inclusive, appear upon the official plat as blocks, and as blocks they should have been considered by the taxing power of the city in fixing the taxing district. In other words, in so doing the official plat of the city should have governed, and the north line of the taxing district drawn so as to divide blocks from 15 to 21, both inclusive, equally north and south. *Smith et al. v. City of Des Moines et al.,* 106 Iowa, 590, 76 N. W. 836, was a suit in equity to enjoin the collection of special assessment for improving Pennsylvania avenue. The widening of the avenue took 40 feet off lot 21 on the corner where it intersects Walker street and added it to the avenue, leaving a strip only 10 feet lengthwise remaining of that lot. At the time the assessment was levied said 10 feet and lot 20 next to it were both assessed for the improvement. The governing statute provided that an assessment for a street improvement "shall be a lien upon the property abutting on such street" on which the improvement is made, and that it "shall be limited to the lot or lands bounding or abutting on such street." In passing, the court held that the assessment was confined to said strip of 10 feet, and could not be extended to cover lot 20, and hence that the assessment attempting so to do was void. The court further held that:

"Where a tract had been platted into lots the platted boundary lines must control, and the assessment must be limited to the lot or parcel of ground which actually abuts on the street, and cannot be extended to a contiguous point, though the latter, with the abutting lot, constitute a single tract, and is used jointly for a

single purpose, * * * and fronts on the street to be improved."

And so we say that, as the platted boundary lines of the lot controlled in that case, so the platted boundary lines of block 15 to 21, both inclusive, must control in this case in determining what is meant by a "block," and that the lots in controversy, lying within the north half of the platted blocks, as they do, were without the taxing district, and hence the assessment sought to be imposed thereon is void. To the same effect see *Gardner et al. v. Eberhart et al.,* 82 Ill. 316, where it is held that the court will take judicial notice of government surveys of land and also blocks and lots in towns and cities. Also, see, *Scott County v. Hinds,* 50 Minn. 204, 52 N. W. 528.

Of course we do not hold that the assessment imposed for improving Cameron street on the north half of lot 7 in block 18, and the south half of lot 2 in block 20, and on lots 2, 3, 4, and 5 in block 21, is void. This for the reason that they are within the south half of those blocks, and are hence within the proper taxing district indicated, and, although included within plaintiff's right of way, are presumed to be benefited by the improvement. Whether they are in fact so benefited we cannot say, for the reason that the same is a legislative question which, having been settled by the legislative power of the city, is conclusive on us. This precise question arose in *L. & N. Ry. Co. v. Barber Asphalt Co. et al.,* 197 U. S. 430, 25 Sup. Ct. 466, 49 L. Ed. 819. The case was on error from the Court of Appeals of Kentucky to review a judgment of the Jefferson circuit court of that state enforcing an assessment for street improvement. The defense made by plaintiff in error that its only interest in the lots was a right of way for its main roadbed, and that neither the right of way nor the lots would get any benefit from the improvement, and hence any special assessment would deny it the equal protection of the law and was contrary to the fourteenth amendment to the Constitution of the United States. The law under which the assessment

was made provided that it should be made at the exclusive cost to adjoining owners to be apportioned according to the number of feet owned by them. The court in passing said:

"There is a look of logic when it is said that special assessments are founded on special benefits, and that a law which makes it possible to assess beyond the amount of the special benefit attempts to arise above its source. But that mode of argument assumes an exactness in the premises which does not exist. The foundation of this familiar mode of taxation is a question of theory. The amount of benefit which an improvement will confer upon particular land, indeed, whether it is a benefit at all, is a matter of forecast and estimate. In its general aspects at least it is peculiarly a thing to be decided by those who make the law." —and held in effect, as expressed by the syllabus, that:

"The fact that the only use made of a lot abutting on a street improvement is for a railway right of way does not make invalid, under Const. U. S. Amend. 14, for lack of benefits, an assessment thereon for the grading, curbing, and paving, made under the area rule, prescribed by Ky. St. secs. 2833, 2834."

And this is in keeping with the weight of authority. Turning to the case affirmed (*L. & N. Ry. Co. v. Barber Asphalt Paving Co.*, 116 Ky. 856, 76 S .W. 1097) we find this language:

"It is not the intangible right to use it, but the strip of land which the railroad company appropriates for its use, and upon which it builds its roadbed, that is, its right of way. The railroad company has been in possession of the strip of land in question for 50 years. * * * It is therefore practically the owner of the land. If this strip of land was not occupied by the railroad company as a right of way, it would not be suggested that it was not subject to the special tax for street improvemnet. The purpose for which the lot is used cannot affect the question of its liability for the cost of street improvement. * * * Under the statute governing street improvement, a lot is any piece of land within the territory defined by the statute or the general council, where the territory to be assessed is not bounded by principal streets. The use or nonuse, or the character of the use, to which the parcel of land is put does not determine the question whether

it is or is not a lot. The strip of land used by the railroad company the day before it was appropriated by it as a right of way was a lot in the meaning of the statute, and to thus appropriate it cannot change its character."

This is in keeping with the holding of our own court in *Kerker et al. v. Bocher et al.*, 20 Okla. at page 763, 95 Pac. at page, 995. The court said:

"Also it is within the power of the Legislature to conclusively determine in advance what improvements shall be taxed against certain districts, and it is presumed that the Legislature has determined in advance what property shall be benefited to the extent of the cost of such improvements. *French v. Barber Asphalt Co.*, 181 U. S. 324, 21 Sup. Ct. 625, 45 L. Ed. 879; *Paulsen v. City of Portland*, 149 U. S. 30, 13 Sup. Ct. 750, 37 L. Ed. 637; *Meier v. City of St. Louis*, 180 Mo. 391, 79 S. W. 955; Cooley on Taxation (3d Ed.) vol. 2, p. 1257; *Harton v. Town of Avondale*, 147 Ala. 458, 41 South. 935."

It follows, Cincinnati avenue being a side street between blocks 20 and 21, that the lots within the south half of those blocks, although within plaintiff's right of way, were properly assessed to pay their share of the cost of paving the intersection of that avenue with Cameron street. It also follows that, for the reason the taxing power of the city erroneously fixed the taxing district, as stated, the court erred in refusing to grant the injunction prayed. The cause is therefore reversed and remanded, with directions to proceed in accordance with this opinion.

All the Justices concur.