JAMES H. GOULDS and others *vs.* THOMAS BROPHY.

November 29, 1889.

Sale—Order for Machine to be Furnished—Implied Warranty—Caveat Emptor.—If an order be given to a manufacturer or dealer for a specific article of a known and recognized kind and description, and if the defined and described thing be actually supplied, there is no implied warranty that it will answer the purpose for which it is intended to be used.

Same—Extent of Implied Warranty.—The only implied warranty or condition of the contract is that it will conform to the description, and be of good workmanship and materials.

Plaintiffs brought this action in the district court for Brown county, to recover the contract price ($154) of the " outfit " described in the opinion. Defence, breach of the alleged warranty stated in the opinion. Upon the trial, before *Webber*, J., the evidence offered to sustain this defence was excluded, and a verdict was directed for plaintiffs. The defendant appeals from an order refusing a new trial.

*J. M. Thompson* and *M. C. Robertson*, for appellant.

*Lind & Hagberg* and *Geo. W. Somerville*, for respondents.

MITCHELL, J. The plaintiffs were manufacturers of and dealers in an earth-boring auger and appurtenances, known as the "Challenge Auger Outfit," of which they had published and circulated descriptive catalogues, one of which they sent to defendant. This catalogue contained cuts or models of the outfit when put up and at work, and of the auger, and enumerated the various tools, etc., of which a full outfit consisted, which were stated to include "everything needed to bore a well, except wood-work for a derrick." It also gave the prices of different sized augers up to 20 inches, and stated that plaintiffs could make to order larger sizes, if desired, but that they did not advise this, since a smaller one would answer all purposes, and that when it is required to make a large hole it was better to use a reamer. The catalogue further stated "these augers have been on the market too long, and are too well known, to need any lengthy explanation or guaranty on our part. We would simply say that our auger is designed to work in soft material only; and for a low-priced auger

outfit the Challenge is equal to any." From this catalogue defendant ordered a 24-inch auger, to which plaintiffs replied, saying that they would not recommend as large an auger as that, as they thought a 15-inch was amply large enough. To this defendant replied, ordering a 20-inch auger outfit complete, with reamer to make a 30-inch hole. In response to this, plaintiffs replied, saying that they had so little call for augers over 15-inch diameter that they did not carry them in stock; that the larger-sized augers, unless in the hands of a man of considerable experience and in a country to which they are particularly adapted, were generally very unsatisfactory; that they worked unnecessarily heavy and slow; and that an auger 15 or less answered all purposes; that they could not fill the order for a 20-inch auger for some time, and did not consider it advisable to make a reamer for a 20 auger for a 30 hole; that they could send defendant a 15 auger outfit complete, with reamer to make a 20 hole, in a few days. To this defendant replied by telegram, ordering a 15 auger, to make a 20-inch hole, which order plaintiffs filled, and sent him the machine. The communications between the parties were all by letter or telegram. When sued for the purchase price, the defence was that the auger outfit was warranted to be suitable for and would perform the work, and would answer the purpose for which it was made, to wit, boring wells; that in fact it was not suitable for and would not perform such work or answer such purpose.

It is not claimed but that, so far as the plan and make of the outfit is concerned, defendant got just what he ordered; but the complaint is that it did not and would not reasonably answer the purpose for which it was designed. There is certainly no express warranty contained either in the catalogue or the correspondence between the parties, all that was anywhere said about the kind of material the auger was designed to work in, or the proper size, etc., being evidently merely precautionary or advisory. It is claimed, however, that there was, under the circumstances, an implied warranty that the article was reasonably fit for the use or purpose for which it was made and intended to be used, to wit, boring wells. As the contract was in writing, no warranty not expressed or implied by its terms can be added, either by implication of law or by parol proof.

*Whitmore* v. *South Boston Iron Co.*, 2 Allen, 52. As to when there is and when there is not an implied warranty that an article ordered from a manufacturer or dealer shall be reasonably fit for the purpose for which it was made or designed to be used, is a question upon which much has been said and written. As to the general rule applicable to the question, all the leading authorities are substantially agreed, although they state it somewhat differently, and are not always agreed in the application of it to the particular facts of a given cause. As stated in 2 Benj. Sales, (4th Am. Ed.) §§ 987, 988, the rule is: "Where a manufacturer or a dealer contracts to supply an article which he manufactures or produces, or in which he deals, to be applied to a particular purpose, so that the buyer necessarily trusts to the judgment or skill of the manufacturer or dealer, there is, in that case, an implied term of warranty that it shall be reasonably fit for the purpose to which it is to be applied." But "where a known, described, and defined article is ordered of a manufacturer, although it is stated to be required by the purchaser for a particular purpose, still if the known, defined, and described thing be actually supplied, there is no warranty that it shall answer the particular purpose intended by the buyer." In short, that there is no implied warranty, where the buyer gets what he bargains for, though it does not answer his purpose. In Leake, Cont. (2d Ed.) 404, the same rule is stated thus: "If an order be given for the manufacture or supply of an article to satisfy a required purpose, *that purpose, and not any specific article, being the essential matter of the contract,* the seller is then bound, as a condition of the contract, to supply an article reasonably fit for the purpose, and is considered as warranting that it is so." But "if an order be given for a specific article of a recognized kind or description, * * * and the article is supplied, there is no warranty that it will answer the purpose described or supposed, although intended and expected to do so." In 1 Pars. Cont. 586, 587, the rule is stated thus: "If a thing be ordered of a manufacturer for a special purpose, and it be supplied and sold for that purpose, there is an implied warranty that it is fit for that purpose. This principle * * * must be limited to cases where a thing is ordered for a special purpose, and not ap-

plied to those where a special thing is ordered, although this be intended for a special purpose." Of the authors quoted, Leake is perhaps the most fortunate and clear in the statement of the rule. This court has announced and applied the same rule in *Cosgrove* v. *Bennett*, 32 Minn. 371, (20 N. W. Rep. 359,)—a case not distinguishable in principle from the present one. Here the defendant simply ordered a specific article of a known, recognized, and defined make or description, which was manufactured by the plaintiffs, and in the market. There was an implied warranty—or, more correctly speaking, condition of the contract—that it should conform to the description, and be of good material and workmanship according to that description, but none that it would answer the purpose described or supposed. The rule of *caveat emptor* applies.

Order affirmed.