Milwaukee Boiler Co. vs. Duncan.

# Milwaukee Boiler Company, Respondent, vs. Duncan, Appellant.

*February 1 — February 23, 1894.*

*Sale of chattels: Boiler manufactured to order: Warranties, express and implied: Waiver of breach: Duty to avoid enhancing damages.*

1. Where a known, described, and defined article is ordered of a manufacturer, although it is stated to be required by the purchaser for a particular purpose, still, if the known, described, and defined thing be actually supplied, there is no warranty that it shall answer the particular purpose intended by the buyer.

2. If an article is sold by a formal written contract which is silent on the subject of warranty, no oral warranty made at the same time or previously can be shown; nor can any additional oral warranty be ingrafted or added to one that is written.

3. A contract to furnish a boiler "to be allowed 130 pounds of steam working pressure by United States inspectors," does not warrant that such boiler will produce or maintain a working pressure of that amount.

4. Where there was a difference of opinion among engineers and boiler makers as to how the grate hangers should be placed in the furnace, and the contract contained no specification on that subject, and they were placed according to a common and approved mode of construction, the buyer cannot complain because some other method was not adopted.

5. Where the buyer, when the boiler was delivered, saw that the grate hangers were placed too high, and they could easily have been changed at a trifling cost, and he assumed to make the change himself although the maker offered to do it, he cannot afterwards complain that they were wrongly placed.

6. If the boiler leaked, when tested before starting, to such an extent as to interfere with the making of steam or as to require a greater amount of fuel, or so as to occasion damage to the boiler, it was the duty of the buyer to have the leak stopped, and not to use the boiler in that condition, to his damage or to the damage of the boiler.

APPEAL from the Circuit Court for *Brown* County.

The plaintiff, a manufacturer of steam boilers in Milwaukee, brought an action against the defendant, engaged in the foundry and machine business at Ft. Howard, and the

owner of one or more steam barges on the lakes, to recover $1,100 and interest for the last instalment of $6,500, the price of a marine boiler built and delivered by the plaintiff for the defendant under an express contract, to wit:

"*John Duncan, Esq., Fort Howard, Wis.*— Dear Sir: Inclosed please find duplicate contracts for marine boiler, which we hope will be satisfactory. If so, please accept, and return one to us. We have ordered the plate, and expect the steel mill will hurry it out for us. We guaranty the boiler to be a first-class job. Yours truly,

"Milwaukee Boiler Co.,

"T. S. McGregor, Superintendent.

"*John Duncan, Esq., Fort Howard, Wis.*— Dear Sir: We propose to furnish you, F. O. B. cars here, March 1, 1891, sooner if possible, one fire box marine boiler, 10 ft. 6 in. by 16 ft. long, to be allowed 130 lbs. steam working pressure by U. S. inspectors, to have two furnaces 58 in. high, 53 in. wide, 84 in. long, with one 10 and one 32 in. flue in each, large flues to have Adamson expansion joint, 156 4-in. tubes, 12 ft. 9 in. long. Steam drum, 54 in. by 8 ft. long, with two 15 in. by 12 in. nozzles, to be connected at Fort Howard. Shell of boiler, 70-100 in. thick; throat 70-100; balance of boiler outside $\frac{1}{2}$ and $\frac{5}{8}$ thick,— all of the best marine flange steel, 60,000 lbs. tensile strength. Boiler to be tested to 195 lbs. water pressure, then steamed up and all leakage stopped before shipping. Ash pan, 15 ft. 6 in. x 26 x 8 in. x 3-16, connected, if necessary, at Fort Howard, breeching, and 20 ft. of 60-in. stack. Price, $6,500.

"Yours truly,          Milwaukee Boiler Co.,

"T. S. McGregor, Superintendent.

"Terms of payment: $1,800, January 5, 1891; $1,800, February 5, 1891; $1,800, March 5, 1891; balance, $1,100, 90 days from date of shipment of boiler,— $6,500."

The defendant accepted the proposition, and a boiler was constructed of the material, kind, and size, in all respects,

as specified in the contract, and was duly tested and placed in the defendant's boat.

The defense was (1) that the boiler leaked; (2) that it was not so built as to be allowed 130 pounds steam pressure by the government inspector, and would not maintain a working pressure of that amount; (3) that the grate hangers were placed too high in the furnace, and too near the bottom of the large flue, whereby the defendant was unable to maintain sufficient fire to get up sufficient steam.

The grate bars were put in by the defendant. The boiler was inspected, and allowed to carry 100 pounds of steam, and finally 130 pounds. Evidence was given tending to show that the boiler leaked, and that by reason of the position of the grate the defendant could not get up enough steam, and generally in respect to the alleged defects in the boiler and their effect upon the capacity of the boat. The court rejected evidence offered to prove that, pending the making of the contract, the defendant informed the plaintiff that he required a boiler that would produce 130 pounds of steam working pressure. Other rulings as to evidence are noticed in the opinion.

The court, among other things, charged the jury that the boiler was to be a first-class job, but there was no warranty contained in the contract as to what this boiler would do,— what amount of steam could be produced by or in it. That if placing the grates on a level with the flue in boilers of this size and kind was a common and approved mode of construction, and there is simply a difference of opinion among engineers and boiler makers as to whether this or some other mode was best in boilers and furnaces of the size and construction called for by the contract, as the evidence tended to show, then it was not a violation of the contract that it adopted one method rather than another, the contract being silent upon the subject. If he had wanted one plan rather than another, it was his busi-

ness to provide for it in the contract. That the law does not permit a party who has been damaged by the failure of another to perform his contract to so conduct himself or his business as to enhance the damages, and recover the enhanced damages. That if there were defects in the boiler, apparent, visible, and known to the defendant, which could have been remedied, he had no right to use the boiler in that condition to his damage, and then charge it to the plaintiff. If the boiler leaked, when tested before starting, to such extent as to interfere with the making of steam or as to require a greater amount of fuel, or so as to occasion damage to the boiler, it was the defendant's duty to have the leak stopped, and not to use the boiler in that condition, to his damage or to the damage of the boiler. So as to the grates,— if not in the right place, and that fact was apparent to the defendant, it was his duty to put them in the right place or position before using the boat. The court declined to charge that there was any implied warranty of the boiler, and said that " there is an express warranty here that the boiler should be a good and workmanlike job, so far as the construction and finish of it is concerned; but it had to be done in accordance with the specifications of the contract, and, if the result is that the boiler so constructed is unfit for the work for which the defendant wanted it, the plaintiff is not responsible for it;" that " if the boiler was made according to contract, and the contract was complied with in all particulars, the plaintiff was entitled to a verdict for $1,100 and interest from July 1, 1891."

The plaintiff had a verdict for the amount claimed, and from a judgment rendered against the defendant therefor, with costs, he has appealed.

For the appellant there was a brief by *Cate, Jones & Sanborn,* and oral argument by *D. Lloyd Jones.*

For the respondent there was a brief by *Greene & Vroman,* and oral argument by *C. E. Vroman.*

PINNEY, J.   1. The clause in the contract, " to be allowed
130 pounds of steam working pressure by United States
inspectors," was not an assurance that the boiler contracted
for would produce and maintain a working pressure to that
amount.   It has no reference to the capacity of the boiler,
and plainly refers to the government inspection of boilers
under sec. 4418, R. S. of U. S., and that it would be such a
boiler that they would *permit* a working pressure of 130
pounds, and set the safety valve accordingly.   There was
no express warranty therefor beyond the guaranty that the
boiler should be a first-class job.

2. The contract contains, it will be seen, very many defi-
nite specifications in respect to the construction of the
boiler and the size and character of its several parts, and
it has been found by the jury that the contract in these
respects had been complied with by the plaintiff.   The jury
was instructed that, if the boiler was not a first-class job in
the particulars of construction specified and complained of,
there was a failure to perform the contract, and, if it had
not been performed in these respects, the plaintiff was not
entitled to the full contract price if the boiler was worth
less for that reason.   So, it will be seen that the jury have
found against the contentions of the defendant in these re-
spects.

3. It was made plain that the defendant got the exact
article or thing he bargained for; and, although it may
have been stated that it was required for a particular pur-
pose, still, as he did not exact an express warranty, he took
the risk of its fitness for the intended use, and no warranty
in that respect can be implied.   Benj. Sales, § 657; *Chanter
v. Hopkins,* 4 Mees. & W. 399; *Ollivant v. Bayley,* 5 Q. B.
288.   In *Jones v. Just,* L. R. 3 Q. B. 197, 202, the rule was
laid down that " where a known, described, and defined
article is ordered of a manufacturer, although it is stated
to be required by the purchaser for a particular purpose,
still, if the known, defined, and described thing be actually

supplied, there is no warranty that it shall answer the particular purpose intended by the buyer." Where the buyer in such case gets what he has bargained for, there is no implied warranty. *Seitz v. Brewers' Ref. Co.* 141 U. S. 518, 519; *Goulds v. Brophy*, 42 Minn. 109; *Deming v. Foster*, 42 N. H. 165. The distinction seems to be between the manufacture or supply of an article to satisfy a required purpose and the manufacture or supply of a specified, described, and defined article, as in this case. In the former case there may be an implied warranty, but in the latter there is none. It is equally well settled that, if the article is sold by a formal written contract which is silent on the subject of warranty, no oral warranty made at the same time or previously can be shown, as the writing is conclusively supposed to embody the whole contract; nor can any additional oral warranty be ingrafted or added to one that is written. *Merriam v. Field*, 24 Wis. 640; *McQuaid v. Ross*, 77 Wis. 470; *De Witt v. Berry*, 134 U. S. 312. The ruling of the court in rejecting the evidence of McGregor, the tendency of which was to show a parol warranty or that the plaintiff knew for what use the boiler was required, was correct. The instructions of the court were in accordance with these principles, and fairly submitted to the jury the question in respect to the warranty or guaranty contained in the contract.

4. As there was no express warranty other than that stated in the contract as to finish and workmanship of the boiler, already noticed, and no warranty could be implied, the defendant has no reason to complain of the rejection of evidence bearing on the subject of damages in these respects. The claim that the grate hangers were placed too high was properly disposed of by the court, on the ground that it was a matter of opinion with machinists and engineers how high or low they should be placed, and the contract, though entering largely into details of construction, contained no specification on the subject. The defendant tes-

Milwaukee Boiler Co. vs. Duncan.

tified that he had had experience as a machinist in and about steam engines and boilers for over fifty years, and had had a machine shop of his own for twenty-five or thirty years; that when the boiler came he saw the defect,— that the hangers ought to be eight inches lower than they were; that the expense of lowering them was trifling; and that he knew, if. put down eight inches, the boiler would make steam better, but he started his boat without making the change, and made no change thereafter. Although the plaintiff offered to make it, yet the defendant assumed to make it himself. He has no cause of complaint in this respect.

5. Considerable testimony was given in respect to the leaking of the boiler, but we do not see that any was excluded that was competent and proper. Three witnesses testified, in substance, that when the boiler was inspected its leaks were of no consequence, and not more than all new boilers do leak at first. The plaintiff had no notice of this inspection, and was not represented when it occurred. Other tests were had, and there was evidence tending to show that the defendant's failure to furnish the proper means of making these tests tended to strain and injure the boiler and cause it to leak, and it was used in the defendant's boat a considerable time without any effort being made to stop the leaks. As the jury evidently found that the plaintiff properly performed its contract, that point having been fairly submitted to them, the defendant has no ground to complain. We think that the charge of the court on this subject was correct. 1 Suth. Dam. 148; *Poposkey v. Munkwitz*, 68 Wis. 331.

As there are no other questions requiring attention, it follows from these views that the judgment should be affirmed.

*By the Court.*— The judgment of the circuit court is affirmed.