GRAND AVENUE HOTEL CO. v. WHARTON et al.

(Circuit Court of Appeals, Eighth Circuit. March 1, 1897.)

SALE—IMPLIED WARRANTY.

Defendant made a contract with plaintiffs to purchase from them two boilers of a certain kind, particularly described in the specifications attached to the contract, such boilers to be set up by plaintiffs in defendant's hotel at Kansas City. After the boilers were set up, it was found that the muddy water of the Missouri river, which was the only source of water supply, caused a sediment to form, which rendered the boilers useless. Held that, though the plaintiffs knew that the water of the Missouri would necessarily be used in the boilers, and knew its character, yet, as defend-

ant had contracted for a definite, known kind of boilers, there was no implied warranty on plaintiffs' part that they would operate successfully with the muddy water of the Missouri.

In Error to the Circuit Court of the United States for the Western District of Missouri.

The plaintiff in error, a Missouri corporation, owning and conducting the Midland Hotel at Kansas City, Mo., on August 26, 1891, entered into a written contract with the defendants in error, a Pennsylvania partnership, using the firm name and style of Harrison Safety Boiler Works, whereby the defendants in error agreed to furnish and deliver to plaintiff in error, upon the cars at Philadelphia, in the state of Pennsylvania, two Harrison safety boilers of 150 horse power each, and the services of an erector to set the same, for the sum of $3,600, to be paid therefor at times specified in the contract, all within 90 days from the time of shipment. The contract contained full, particular, and minute specifications of the material and construction of the boilers in all their parts. The boilers were delivered and set up according to the contract, and by reason of some material accepted by the defendant in error to apply upon the price the claim for said boilers was reduced to $3,555. When said boilers were put in use in said hotel, it was found that from the muddy water of the Missouri river, used in them, sediment was deposited, filling, or partially filling, the caps which formed the lower portions of the boilers, and causing incrustations, diminishing the heating capacity of the boilers, and also causing such caps to burst, requiring the fires to be drawn and the replacing of the broken caps with new ones, entailing frequent interruptions in the heating of the hotel. For the purpose of cleansing such water from the mud before use in said boilers, the plaintiff in error, in December, 1891, purchased of defendants in error one Cochrane feed-water heater for $325, on which the defendants in error paid freight to the amount of $13.02, which is the basis of the second cause of action. The third cause of action is for new caps and other material furnished on orders of plaintiff in error for use in repairs of the boilers rendered necessary from the causes aforesaid. The defendants in error were the manufacturers of these boilers. And plaintiff in error, by its answer, alleged that when said written contract of August 26, 1891, was entered into, the defendants in error well knew that the boilers were for use in said Midland Hotel in Kansas City, and also the uses there required of them; that the only supply of water was the Missouri river; and that from these circumstances they impliedly undertook and warranted that such boilers were adapted to the use of said hotel, and to the use of water from the Missouri river; and alleged that by reason of constant incrustations and breakings as above indicated they wholly failed to subserve such uses, entailed on plaintiff in error large expenses and damages, sought to be recovered as a counterclaim, and were worthless, and as such had been removed from the hotel, after defendants in error had made ineffectual attempts to put them in suitable working order. Upon the trial, the plaintiff in error offered to show that before the making of said written contract the agent of defendant in error came to Kansas City to make the contract with plaintiff in error for boilers embodying the Harrison principle, adapted to the use of said hotel and to the use of Missouri river water, knowing that this was the supply of water on which the plaintiff in error must depend in using such boilers, and that this was made known to him by the plaintiff in error before the making of such contract. Also that the boilers furnished were wholly unfit and unsuitable for the use of Missouri river water. Upon the objection that the testimony so offered was immaterial and irrelevant, and had no tendency to prove an implied warranty, the court excluded such offers of testimony, to which rulings the plaintiff in error duly excepted. Under the direction of the court the verdict of the jury was in favor of the plaintiffs below for substantially the amount claimed in the first three causes of action, the other having been abandoned.

Gardiner Lathrop (Thos. R. Morrow, John M. Fox, and Samuel W. Moore with him on brief), for plaintiff in error.

Sanford B. Ladd (John C. Gage and Charles F. Small with him on brief), for defendants in error.

Before SANBORN and THAYER, Circuit Judges, and LOCH-REN, District Judge.

LOCHREN District Judge, after stating the case as above, delivered the opinion of the court.

1. Where a manufacturer contracts to supply an article which he manufactures to be applied to a particular use of which he is advised, so that the buyer necessarily trusts to the judgment and skill of the manufacturer, there is an implied warranty that the article shall be reasonably fit for the use to which it is to be applied. Bridge Co. v. Hamilton, 110 U. S. 108, 3 Sup. Ct. 537; Leopold v. Van Kirk, 27 Wis. 152; Jones v. Just, L. R. 3 Q. B. 197; Brown v. Edgington, 2 Man. & G. 279; Lime Co. v. Fay (Neb.) 55 N. W. 213; Pease v. Sabin, 38 Vt. 432; Iron Co. v. Groves, 68 Pa. St. 149.

2. But when a known, described, and definite article is ordered of a manufacturer, although it be stated by the purchaser to be required for a particular use, yet if the known, described, and definite thing be actually supplied, there is no implied warranty that it shall answer the particular purpose intended by the buyer. Seitz v. Machine Co., 141 U. S. 510, 12 Sup. Ct. 46; Jones v. Just, L. R. 3 Q. B. 197; Cosgrove v. Bennett, 32 Minn. 371, 20 N. W. 359; Chanter v. Hopkins, 4 Mees. & W. 399; Boiler Co. v. Duncan, 87 Wis. 120, 58 N. W. 232. In the case last cited it was said by the court:

"It was made plain that the defendant got the exact article or thing he bargained for; and, although it may have been stated that it was required for a particular purpose, still, as he did not exact an express warranty, he took the risk of its fitness for the intended use, and no warranty in that respect can be implied."

3. The language of the court in the Wisconsin case just quoted applies exactly to the present case. Here the purchaser contracted for a definite, well-known kind of boiler, its president having then a boiler of the same kind in use. The specifications as to the size, form, material, and every detail were minute, and embodied in the contract. The manufacturers were obligated to deliver exactly such boilers as were described and contracted for, and could not, under the contract, deliver anything different. There is no claim that the boilers did not in every respect conform to this contract and specifications, nor any claim that they were defective, either in respect to workmanship or material. The purchaser did not exact a warranty that the boilers would operate with the muddy waters of the Missouri river, and therefore assumed that risk itself. The writing must, on familiar principles, be held to embody the entire contract obligations of the parties, and all negotiations and colloquies of the parties preceding the execution of the writing were immaterial. The surrounding circumstances might be considered in applying the terms of the contract, or in the interpretation of doubtful terms, but not for the purpose of adding terms not contained in the writing. There was nothing doubtful or uncertain in the terms of this written contract. There were no errors in the rulings of the court, and the judgment is affirmed.