SEVERENS, District Judge,
having stated the case as above, delivered the opinion of the. court.
The first question on this appeal presented by the appellants arises upon the construction of the contract of January 7, 1892. It is insisted by them that this contract, upon its fair interpretation, required the contractors not only to build and set the boiler in place on the vessel, but also required that they should fasten it down so that it would not, in the ordinary incidents of navigation, be moved out of its place by the motion of the vessel. The appellees deny that the contract extended to impose such an obligation as this, and contend that their duty was discharged when the boiler was properly put in its place.
Proof was taken in the court below with respect to the conduct of the parties at the time when the inspection was made in respect to the boiler fastenings, as indicating the view which the parties respectively took of the obligations of the contract in this particular. It must be conceded that, if the decision of the case turned upon this question, it would be a matter of considerable difficulty; but we do not find it necessary to decide it. It is shown beyond doubt that when the time arrived for the completion of the contract, and the boiler was put in its place, the contractors made special request of the owners of the steamer to examine the work for themselves, for the purpose of determining whether it was satisfactorily done, and *940 that, in pursuance of that request, Mr. Carleton (the manager), Gapt. Symes, and the chief engineer were all present for that purpose, had full opportunity to inspect the boiler and its fastenings, and did in fact inspect them and comment upon the fastenings, in respect of the very subject upon which complaint is now made. Without requiring any alterations to be made or anything further to be done by the appellees, the work was accepted, and the steamer, with its machinery, taken away. After this inspection, made for the purpose of determining the question of their acceptance, and the taking the machinery away without any further requirements, we think the appellants were properly held to have been concluded from after-wards raising the question of the nonperformance of the contract. Beverley v. Coke Co., 6 Adol. & E. 829; Parker v. Palmer, 4 Barn. & Aid. 387; Bianchi v. Nash, 1 Mees. & W. 545; Norton v. Dreyfuss, 106 N. Y. 90, 12 N. E. 428; Iron Co. v. Pope, 108 N. Y. 232, 15 N. E. 335; Pierson v. Crooks, 115 N. Y. 539, 22 N. E. 349; Studer v. Bleistein, 115 N. Y. 316, 22 N. E. 243; Hirshhorn v. Stewart, 49 Iowa, 418. The two cases in 115 N. Y. and 22 N. E. contain very full and elaborate discussions of the law on this subject.
A suggestion is made in behalf of the appellants that the appellees were skilled in their work, and that for that reason they (the appellants) were entitled to rely upon the representations made by the manufacturers, that the fastening was sufficient, and that, their acceptance being founded upon a representation which turned out to be untrue, the appellants are not bound by such acceptance. We are unable, however, to find much force in this suggestion. It might have significance if the question related to the construction of the boiler itself, and applied to inherent defects, or those which were not as readily observable to the other party as to the manufacturers; but the matter of the fastenings to the boat was open, and as much exposed to the inspection and judgment of the appellants as to the manufacturers, and the requirements would seem to be as much within the knowledge of the manager, the captain of the boat, and more especially the chief engineer, who had immediate charge of the machinery, as to any one. In these circumstances, the doctrine which the appellants invoke would not have application. Dounce v. Dow, 57 N. Y. 16; Gurney v. Railway Co., 58 N. Y. 359Dounce v. Dow, 64 N. Y. 411; Benj. Sales, § 701. But it is contended that in fact the appellants raised a question as to the sufficiency of the fastenings of the boiler at the time of the inspection, and that thereupon the appellees entered into an express agreement to warrant the fastenings to hold; and the appellants claim that this was a continuing guaranty, upon which the owners of the vessel might take the machinery, and look to the manufacturers if any damage should subsequently ensue in consequence of any defect in the fastenings. We have looked through the evidence bearing upon the question whether any express guaranty was in fact given or intended, and we quite agree with the conclusion which was reached by the learned judge in the court below,—that the remarks made by Mr. Jenks, who represented the manufacturers on the occasion of the inspection, and *941 which are now claimed to have been a warranty, were nothing more than an opinion upon, or an expression of confidence in, the mode and sufficiency of the fastenings, and that they were not intended or understood to be in the nature of a contract. The decisive test as to whether the words used constitute a warranty or not is well stated in Benj. Sales, § 613, as follows:
“Whether the vendor assumes to assert a fact of which the buyer is ignorant, or merely states an opinion or judgment upon a matter of which the vendor has no special knowledge, and on which the buyer may be expected also to have an opinion and to exercise his judgment. In the former case there is a warranty; in the latter, not.”
Having reached this conclusion upon the facts, we do not find it necessary to consider the question discussed by the court below in its opinion, as to whether evidence of the supposed guaranty was admissible, in view of the existence of the written contract, or whether, if the guaranty was made, it rested upon any sufficient consideration. No doubt, where there is a warranty, express or implied, on the part of the vendor of goods, the acceptance of them by the buyer does not preclude him from relying upon the warranty. The warranty “survives the acceptance,” and one of the remedies which the buyer has in case there is a breach of the warranty is to sue the vendor for the damages he has sustained thereby. And so where work and materials go together. Waring v. Mason, 18 Wend. 426; Vincent v. Leland, 100 Mass. 432; Milton v. Rowland, 11 Ala. 732; Muller v. Eno, 14 N. Y. 597; Underwood v. Wolf, 131 Ill. 425, 23 N. E. 598. But that rule has no application to the present case. We have, as already stated, found that here there was no express warranty, and there can be no implied warranty, that the work and materials furnished were suitable and adapted to the purpose, in respect to the defect which it is claimed existed here, where it was open, and as plainly observable to the vendee as it was to any one. Jones v. Just, L. R. 3 Q. B. 197; Bridge Co. v. Hamilton, 110 U. S. 108, 3 Sup. Ct. 537; Dushane v. Benedict, 120 U. S. 630, 636, 7 Sup. Ct. 696. In Bridge Co. v. Hamilton, supra, Mr. Justice Harlan, delivering the opinion of the court, states the essentials to such an implied war-ranty as was found in that case to be “the construction by a company whose business it is to do such work, to be used in the same way the maker intended to use it, and the latent defects in which, as the maker knew, the buyer could not, by any inspection or examination at the time, discover; that the buyer did not, because in the nature of things he could not, rely on his own judgment, and, in view of the circumstances of the case and the relations of the parties, he must be deemed to have relied on the judgment of the company, which alone, of the parties to the contract, had or could have knowledge of the manner in which the work was done.” The subject is fully discussed, and the distinction stated, in 2 Story, Cont. § 1071 et seq., from which it clearly appears that if the work is open to the inspection of the buyer, and the opportunities for forming a judgment of its sufficiency are open to the buyer as well as to the seller, the rule of caveat emptor applies.
*942 It is right to add that we are impressed with the belief, upon consideration of the evidence, that the misfortune which befell the Coffinberry was due mainly, if not altogether, to the weakness and imperfections of the timbers in the frame of the vessel. She was comparatively old, and, although probably not much decayed, yet she had become somewhat loose jointed in that part of her structure where the boiler was located, and it is probable that the strain and working of the timbers when the vessel was racked by the storm had much to do with the displacement of the boiler; and we think the probabilities are more than even that the defects in the timber structure had more to do with the disaster than any defect inherent in the fastenings themselves. We conclude that the decree in the court below should be affirmed, with costs, and it is so ordered.