### DAVIS CALYX DRILL CO. v. MALLORY et al.

(Circuit Court of Appeals, Eighth Circuit. April 11, 1905.)

No. 2,132.

**1. SALE—IMPLIED WARRANTY OF FITNESS FOR PARTICULAR PURPOSE—WHEN IT ARISES.**

An implied warranty that an article will be fit for a particular purpose may be inferred from a contract to make or furnish it to accomplish that specific purpose, because the accomplishment of the purpose is the essence of this contract.

**2. SAME—WHEN IT DOES NOT ARISE.**

But no implied warranty of such fitness arises out of a contract to make or supply a described and definite article, although the vendor knows that the vendee is purchasing it to accomplish the specific purpose, because the essence of this contract is the delivery of the specific article, and not the accomplishment of the purpose.

**3. SAME—FACTS—DECISION.**

A vendee contracted with a manufacturer, in writing, to buy and pay for one class F3 drill made by the latter, and described in its catalogue, and certain other specific machinery and tools, for an agreed price. Before this contract was made, the vendee informed the vendor that he wanted the drill and machinery to bore holes through certain described strata in land in the county of Lucas, in the state of Iowa, and the manufacturer assured him that its class F3 drill would do this work as rapidly and economically as a diamond drill. But the written contract was silent upon this subject. The vendor relied upon this assurance of the manufacturer, and made the contract. *Held*, there was no implied warranty

that the drill and its machinery would be suitable to bore holes through the specific described strata in Lucas county, Iowa.

4. WRITTEN CONTRACT—PRESUMPTIONS—PAROL EVIDENCE TO EXTEND INCOMPETENT.

When the written agreement of the parties is complete in itself, the conclusive legal presumption is that it embodies the entire engagement of the parties, and the manner and extent of their obligations, and parol evidence of other terms relating to the same subject-matter is inadmissible to extend, modify, or contradict it.

5. SAME—IMPLIED WARRANTY OF FITNESS—EXTENT.

An implied warranty of the fitness of a machine to do a particular work does not include a warranty that it will do the work as rapidly or economically as some other specified machine. Such a covenant can be introduced by express contract only, and parol evidence of it is excluded by a written contract of sale which is silent on the subject.

Philips, District Judge, dissenting.

(Syllabus by the Court.)

In Error to the Circuit Court of the United States for the Southern District of Iowa.

On June 25, 1902, the Davis Calyx Drill Company, a corporation, made a written contract with S. H. Mallory to furnish him free on board the cars at Tarrytown, in the state of New York, one class F3 drill, which is described in its catalogue, and certain specific machinery, tools, and articles, for which Mallory promised to pay $2,459. Mallory has since died, and the defendants are the executrices of his will. The Calyx Company made and delivered the drill, the machinery, and the articles according to the contract, and this is an action to recover their purchase price. Two defenses were interposed—fraudulent misrepresentation and the breach of an implied warranty by the plaintiff. The court withdrew the former defense, and submitted the latter to the jury. There was evidence which had a tendency to establish these facts: The plaintiff was a corporation engaged in the manufacture of drills and other machinery at Tarrytown, in the state of New York. Mallory was engaged in prospecting for coal in lands in Lucas county, in the state of Iowa, and William Haven was his agent. Haven had used a diamond drill for this purpose prior to June, 1902, but he objected to it because it would frequently fail to produce any core, for the reason that the coal was soft, and the diameter of the core was only one inch. He was desirous of obtaining a drill which would produce a larger core. He heard of the Davis Calyx drill, procured one of the plaintiff's catalogues, went to Tarrytown, and saw one of the plaintiff's drills in operation with a shot bit; but he could not form any opinion upon the question whether or not it was fit to work in the strata in earth in Lucas county, in the state of Iowa. The drill was provided with a cutter and a shot bit, and these were exchanged in the operation to accommodate the drill to the hardness of the material through which it was to pass. Haven met the secretary and the general manager of the plaintiff. He described to them the strata through which a drill must pass in boring holes upon the land of Mr. Mallory, and explained to them that he desired to get a machine which would produce a larger core than a diamond drill, and would operate as economically and rapidly. They told him that their machine was just the drill he wanted. They showed him pieces of stone through which it had passed, and stated to him that it would sink 25 or 30 feet per day; that it would operate as economically and as rapidly as a diamond drill, and would get a larger core. Thereupon Haven made the contract in suit on behalf of his principal, Mallory, in reliance upon these representations, and upon the judgment of the officers of the plaintiff, expressed in this way. The plaintiff furnished the drill and all the other specific machinery, tools, and articles described in the contract, and furnished an expert to set up and operate the drill. But the machine would not work satisfactorily. It would sink only 8 or 10 feet per day on the average, while a diamond drill would bore into the same ground at the rate of 25 feet per day. The plaintiff claimed that these facts evidenced an implied warranty that the drill would be fit and suitable

to bore holes through the strata in Lucas county, Iowa, underneath his land, as rapidly and economically as a diamond drill. All the testimony relative to this alleged warranty was received over the objections of the plaintiff, and was contradicted by testimony which it produced. The court instructed the jury, in effect, that if Haven correctly described to the secretary and general manager of the plaintiff the strata through which the drill was to be sunk under the land of Mallory, and if the secretary and general manager knew where the drill was to be used, and stated that it would do as much work there, and do it as economically, as a diamond drill, then the plaintiff had made an implied warranty that the drill would work in this way, and that, if it did not do so, the defendants had a right to rescind the contract, to return the drill, and to recover the expenses which they or their decedent had incurred in the attempt to operate it. The plaintiff excepted to this portion of the charge, and to the introduction of the evidence relative to the alleged warranty, and there was a verdict for the defendants.

Joseph C. Mitchell and Francis M. Hunter, for plaintiff in error.
Washington I. Babb and Theodore M. Stuart, for defendants in error.

Before SANBORN, Circuit Judge, and PHILIPS and RINER, District Judges.

SANBORN, Circuit Judge, after stating the case as above, delivered the opinion of the court.

An implied warranty that an article will be fit for a particular purpose may be inferred from a contract to make or supply it to accomplish that purpose, because the accomplishment of the purpose is the essence of the undertaking. But no such warranty arises out of a contract to make or supply a specific, described, or definite article, although the manufacturer or dealer knows that the vendee buys it to accomplish a specific purpose, because the essence of this contract is the furnishing of the specific article, and not the accomplishment of the purpose. In other words, a warranty that a machine, tool, or article sold is fit and suitable to accomplish a particular purpose or to do a specific work may be implied when the manufacturer or dealer knows the purpose or work to be effected, and the purchase of the machine, tool, or article is in reality an employment of the vendor to do the work by making or furnishing a machine, tool, or article to effect it. Kellogg Bridge Co. v. Hamilton, 110 U. S. 108, 116, 3 Sup. Ct. 537, 28 L. Ed. 86; Breen v. Moran, 51 Minn. 525, 53 N. W. 755; Leopold v. Van Kirk, 27 Wis. 152, 156; Brenton v. Davis, 8 Blackf. (Ind.) 318, 44 Am. Dec. 769; Omaha Coal, etc., Co. v. Fay, 37 Neb. 68, 75, 55 N. W. 211; Lee v. Sickles Saddlery Co., 38 Mo. App. 201, 205; Rodgers & Co. v. Niles & Co., 11 Ohio St. 53, 57, 78 Am. Dec. 290; White v. Adams, 77 Iowa, 295, 297, 42 N. W. 199.

But no implied warranty that a machine, tool or article is suitable to accomplish a particular purpose or to do a specific work arises where the vendor orders of the manufacturer, or purchases of the dealer, a specific, described, or definite machine, tool, or article, although the vendor knows the purpose or work which the purchaser intends to accomplish with it, and assures him that it will effect it. Such an assurance is but the expression of an opinion, when it is followed by a written contract, complete in itself, which

is silent upon the subject. The extent of the implied warranty in such a case is that the machine, tool, or article shall correspond with the description or exemplar, and that it shall be suitable to perform the ordinary work which the described machine is made to do. Seitz v. Brewers' Refrigerating Co., 141 U. S. 510, 518–519, 12 Sup. Ct. 46, 35 L. Ed. 837; Keates v. Cadogan, 2 E. L. & E. 320, 10 C. B. 591; Grand Ave. Hotel Co. v. Wharton, 24 C. C. A. 441, 443, 79 Fed. 43, 45; Morris v. Bradley Fertilizer Co., 64 Fed. 55, 56, 12 C. C. A. 34, 35; Leake on Contracts (4th Ed.) 261, 262; 1 Parsons on Contracts, 586, 587; Union Selling Co. v. Jones, 128 Fed. 672, 675, 677, 63 C. C. A. 224, 227, 229; McCray Refrigerating, etc., Co. v. Woods, 99 Mich. 269, 58 N. W. 320, 321, 41 Am. St. Rep. 599; Cosgrove v. Bennett, 32 Minn. 371, 20 N. W. 360; Goulds v. Brophy, 42 Minn. 109, 43 N. W. 834, 6 L. R. A. 392; Wisconsin Red Pressed Brick Co. v. Hood, 54 Minn. 545, 56 N. W. 165; Fairbanks, Morse & Co. v. Baskett (Mo. App.) 71 S. W. 1113; Wheaton Roller Mill Co. v. John T. Noye Mfg. Co., 66 Minn. 156, 68 N. W. 854, 855; Boiler Co. v. Duncan, 87 Wis. 120, 58 N. W. 232, 41 Am. St. Rep. 33; Case Plow Works v. Niles, Scott & Co., 90 Wis. 590, 63 N. W. 1013; Deming v. Foster, 42 N. H. 165, 175; Morse v. Union Stockyard Co., 21 Or. 289, 28 Pac. 2, 3, 14 L. R. A. 157; Dushane v. Benedict, 120 U. S. 630, 647, 7 Sup. Ct. 696, 30 L. Ed. 810; Carleton v. Jenks, 80 Fed. 937, 26 C. C. A. 265; Checkrower Co. v. Bradley & Co., 105 Iowa, 537, 546, 75 N. W. 369; Latham v. Shipley, 86 Iowa, 543, 53 N. W. 342; Blackmore v. Fairbanks, Morse & Co., 79 Iowa, 289, 44 N. W. 548; Parsons Band-Cutter, etc., Co. v. Mallinger, 122 Iowa, 703, 98 N. W. 580.

If the purchaser, Mallory, or his agent, Haven, had described the strata through which he desired to drive the drill, and had ordered the Calyx Company to make or to select and furnish to him a drill that would bore the desired holes through these strata as rapidly and economically as a diamond drill, for an agreed price, and the plaintiff had accepted the order, an implied warranty would have arisen that the drill to be furnished under that contract would do the work as speedily and cheaply as a diamond drill. But an accepted order to make and deliver a specific, described drill, which the vendor is engaged in making, has no such effect, although the manufacturer knows the use for which the vendee desires to obtain it. The reason for this rule is conclusive and unanswerable. When a manufacturer or dealer agrees to make or furnish an article that will accomplish a particular purpose, the accomplishment of the purpose is the substance of his undertaking, and he is free to make or to supply any article that will do the work required. If he furnishes an article that will accomplish this purpose, he performs his contract, although the article he supplies may differ widely from that contemplated by the purchaser when he made the agreement to buy. On the other hand, when the manufacturer or dealer contracts to make or to deliver a specific and definitely described article, to enable the vendor to accomplish a known purpose, the essential part of his obligation is the delivery of the identical article described in the contract; and the delivery

of a different article, although it may better accomplish the desired result, is not a performance of his agreement, and does not entitle him to recover the purchase price. The furnishing of the article described, and that alone, whether that article is fit for the known purpose to which the vendee intends to apply it or not, constitutes a compliance with the contract by the vendor, and entitles him to secure its fruits. The familiar illustration of this distinction by Maule, J., in Keates v. Cadogan, 2 Eng. Law & Eq. Rep. 320, 10 C. B. 591, is still the most felicitous:

"If a man says to another, 'Sell me a horse fit to carry me,' and the other sells a horse which he knows to be unfit to ride, he may be liable for the consequences; but if a man says, 'Sell me that gray horse to ride,' and the other sells it, knowing that the former will not be able to ride it, that would not make him liable."

In Kellogg Bridge Co. v. Hamilton, 110 U. S. 108, 116, 3 Sup. Ct. 537, 28 L. Ed. 86, the bridge company had erected a portion of the falsework requisite for the construction of a bridge across the Maumee river. Hamilton made a contract with the company to purchase the falsework, the foundation of which was concealed by the river, and to complete the bridge. While he was engaged in the performance of this contract, the falsework gave way, by reason of defects in its construction, and precipitated the iron upon it into the river. The Supreme Court held that the bridge company impliedly warranted that the work which it sold to Hamilton was suitable to construct the bridge upon because it built this falsework, and had sold it to Hamilton to accomplish that specific purpose.

But in Seitz v. Brewers' Refrigerating Co., 141 U. S. 510, 512, 519, 12 Sup. Ct. 46, 35 L. Ed. 837, the refrigerating company had been informed before it made its agreement that Seitz was cooling his brewery with ice, that he wanted to dispense with the use of ice, that no machine would be of any value to him unless it would enable him to accomplish this result, and that such a machine must continuously cool 150,000 cubic feet of air to a temperature of 40° Fahrenheit. Thereupon the refrigerating company assured Seitz that its machine would accomplish this result, and, in reliance upon this statement, he entered into a written contract with the company to the effect that the latter should supply and put in operation in his brewery a No. 2 size refrigerating machine, as constructed by it, for the sum of $9,450. The company made and put such a machine in his brewery, but it did not work satisfactorily, and it was incapable of cooling 150,000 cubic feet of air to 40° Fahrenheit. The Supreme Court held that this case fell under the rule that "where a known, described, and definite article is ordered of a manufacturer, although it is stated by the purchaser to be required for a particular purpose, still, if the known, described, and definite thing be actually supplied, there is no warranty that it shall answer the particular purpose intended by the buyer," and that there was neither an expressed nor an implied warranty that the ice machine would do the work for which the manufacturer knew that it was purchased, or that it would cool 150,000 cubic

'feet of atmosphere to 40° Fahrenheit or to any other temperature. This decision indicates the unavoidable conclusion in the case at bar. It also answers the contention of counsel that this case is not governed by the rule that there is no implied warranty of fitness where a known, definite, and described thing is purchased, because Mallory and Haven were not familiar with, and had had no experience in the operation of, the class F3 drill which they purchased. It is not the familiarity of the purchaser with the character and work of the machine ordered, but the identity of the thing described in the contract, which brings the latter within the rule. Seitz was probably ignorant of the character and of the operation of the No. 2 size refrigerating machine which he bought, and he relied upon the assurance of the vendor that it would cool his brewery as he desired. But the machine which he ordered was identified by the description in his contract, and that description made it a known, described, and definite thing. So in the case at bar the description in the accepted order which Haven made of the class F3 drill perfectly identified it—made it a known, described, and definite thing, within the meaning of this rule, and brought the contract clearly under its operation.

In Grand Avenue Hotel Co. v. Wharton, 24 C. C. A. 441, 443, 79 Fed. 43, 45, the vendee ordered two boilers for use in its hotel. The vendor knew the use to which the vendee intended to put the articles, and knew that it must necessarily use the muddy water of the Missouri river in order to operate them. The boilers were furnished, but they would not operate with the water of the Missouri river. This court held that there was no implied warranty that they would do so, and sustained the judgment for their purchase price.

In Boiler Co. v. Duncan, 87 Wis. 120, 58 N. W. 232, 234, 41 Am. St. Rep. 33, the purchaser informed the manufacturer before he made his order that he required a boiler that would produce 130 pounds steam, working pressure, and thereupon the latter offered to furnish a described boiler, and he accepted the offer. The boiler specified was furnished, but it failed to produce 130 pounds steam, working pressure, or to do the work for which the manufacturer knew the purchaser ordered it. The Supreme Court of Wisconsin decided that there was no implied warranty that it would accomplish the particular purpose for which it was bought, and said:

"The distinction seems to be between the manufacture or supply of an article to satisfy a required purpose, and the manufacture or supply of a specified, described, and defined article, as in this case."

In Goulds v. Brophy, 42 Minn. 109, 112, 43 N. W. 834, 835, 6 L. R. A. 392, the vendee ordered from the catalogue of the manufacturer an auger outfit to bore wells. The vendor furnished the outfit, but it was not suitable to bore the wells which the vendee desired to sink. The Supreme Court of Minnesota held that there was no implied warranty that it would do so, and said:

"There was an implied warranty—or, more correctly speaking, condition of the contract—that it should conform to the description, and be of good material

and workmanship according to that description, but none that it should answer the purpose described or supposed."

There are many authorities to the same effect, but it would be a work of supererogation to review them. The contract of the Calyx Drill Company in this case was expressed in writing. It was that it would make and deliver to the purchaser, Mallory, one class F3 drill, and certain other machines and articles, which were definitely specified in the contract. When it supplied these articles, it performed its agreement, whether they were suitable to perform the specific work of boring holes in the land controlled by the vendee in Lucas county, Iowa, or not. There is no averment or proof that they were not fit to accomplish the general purpose for which they were made—to bore holes in the earth under ordinary circumstances. The contract of the Calyx Drill Company was not that it would make and deliver a drill which would sink holes in the ground of the vendee in Lucas county as rapidly and economically as a diamond drill; and, if it had made and delivered a drill which would have done this, it would have been required, if the testimony of the defendants is true, to have furnished a different drill and different machinery from that described in its contract, and in so doing it would have failed to perform it.

The reception of the evidence and the charge of the court upon this subject were erroneous (1) because there was no implied warranty that the drill and machinery would be fit to bore holes through the specific strata in the earth in Lucas county; and (2) because, if there had been such a warranty, it would not have included a covenant that the machinery would sink them as rapidly and economically as a diamond drill. Such a covenant could be imported into the contract only by an express agreement, and such an agreement was excluded by the fact that the contract is in writing, and by the rule that, where the written contract of the parties is complete in itself, the conclusive legal presumption is that it embodies the entire engagement of the parties, and the manner and extent of their obligations, so that parol evidence of other terms is inadmissible to extend, modify, or contradict it. Green v. Chicago & N. W. Ry. Co., 35 C. C. A. 68, 71, 92 Fed. 873, 877; McKinley v. Williams, 20 C. C. A. 312, 319, 74 Fed. 94, 101; Wilson v. New U. S. Ranch Co., 20 C. C. A. 244, 249, 73 Fed. 994, 999; Union Selling Co. v. Jones, 63 C. C. A. 224, 227, 128 Fed. 672, 675.

The judgment is accordingly reversed, and the case is remanded to the court below, with instructions to grant a new trial.

PHILIPS, District Judge (dissenting). I am unable to concur in the foregoing opinion. I make no question of the correctness of the general rule laid down, that, where a known and definite article is ordered of a manufacturer, although it be stated by the purchaser that it is required for a particular purpose, yet, if the known described thing be accordingly supplied, there is no warranty that it will answer the particular purpose desired by the purchaser. This for the obvious reason that the vendor undertakes by the

terms of the expressed contract to furnish only the articles both parties have designated, and therefore the contract is performed by the vendor when the article delivered corresponds with the thing described and called for. Such was the case in Seitz v. Brewers' Refrigerating Machine Co., 141 U. S. 510, 12 Sup. Ct. 46, 35 L. Ed. 837. In that case the parties entered into a written contract, whereby the vendor agreed to supply the vendee with a No. 2 size refrigerating machine, "as constructed by the said party of the first part." The answer in that case simply alleged that the plaintiff represented that the machine was capable of cooling certain rooms in the brewery, but the machine, when set up and operated, was not so capable, and failed to perform the work for which, upon the representations of the plaintiff, the machine had been contracted for; that the defendant contracted upon the faith of the guaranty by the plaintiff that it would cool certain rooms. The representation was that it had the capacity of cooling a space of 150,000 cubic feet of air to a temperature sufficiently low for the purpose of brewing or manufacturing beer. The evidence tended to show that, prior to the execution of the contract, plaintiff's agent had represented that the machine would cool 150,000 cubic feet of 40° Fahrenheit; that the defendant had been cooling his brewery with ice, and wished the machine to cool it to about the same extent. The evidence further showed that, perhaps before the machine was accepted, the defendant wrote to the plaintiff, and requested a guaranty from it that the machine would accomplish this result, which was refused, notwithstanding which the defendant used the machine. It was of this state of the case that the court said that the machine purchased was specifically designated in the contract, and that:

"The only implication in regard to it was that it would perform the work the described machine was made to do, and it is not contended that there was any failure in such performance. This is not the case of an alleged defect in the process of manufacture known to the vendor, but not to the purchaser, nor of presumptive and justifiable reliance by the buyer on the judgment of the vendor rather than his own, but of a purchase of a specific article, manufactured for a particular use, and fit, proper, and efficacious for that use, but in respect to the operation of which, in producing a desired result under particular circumstances, the buyer found himself disappointed."

Further on the court said:

"The alleged antecedent representations as to whether the machine possessed sufficient refrigerating power to cool this brewery were no more than expressions of opinion, confessedly honestly entertained, and dependent upon other elements than the machine itself, concerning which plaintiff in error could form an opinion as well as defendant; and the conduct of plaintiff in error in demanding, two days after the contract was executed, a written guaranty that the machine company would cool his building to 40° Fahrenheit, and keep it at that all the time, and in acquiescing in the company's refusal to give the guaranty for reasons stated, and in thereupon afterwards ordering the company to go on with the work, seems to us to justify no other conclusion than that reached by the verdict."

I respectfully submit that that case is not this. Here the vendee was engaged in prospecting for coal in given localities in the state of Iowa. Because of the peculiar geological formation of the earth to be bored through to reach the coal deposit, the diamond drill,

customarily employed in such operations, proved to be ineffective and inadequate. Chancing to see a prospectus issued by the plaintiff manufacturer in the state of New York, commending its drills, Mallory sent his agent on to New York to interview the manufacturer. This agent informed the representative of the manufacturer fully as to the trouble Mallory encountered in using the diamond drill—that, the coal being soft, the defendant would not get any core at all, or it would be so small that he could not judge the quality of the coal, and that what was desired was to procure a drill that would produce a larger core. This agent went to Tarrytown, where the plaintiff's machine shops were located, but it had no drills manufactured and set up so that they could be seen. The agent went with plaintiff's representative to another place, and saw one of plaintiff's drills operated with a shot bit attachment, working a short distance only from the surface. He did not see it working with a "cutter," as represented. The agent could not form an opinion as to whether that drill was fitted for operating and working in the desired locality in Iowa. He told the plaintiff the general geological formation of the several coal veins, and the difficulty of getting through the different varieties—some very hard and some very soft material. Plaintiff's agent then represented how his machine would work—that it would go through the character of stratas and geological formation in the territory where Mallory was operating; that it would work all right, operate cheaply, producing a large core instead of a small one—and thereupon Mallory's agent closed the contract. In this case, therefore, there was an article—a machine—not in esse. It was to be manufactured to answer a purpose made known to the manufacturer, which purpose the manufacturer said his machine would accomplish. Whether or not it could do so could not possibly be known to the purchaser until the machine was put in actual operation in the field in Iowa. The vendor knew that the machine it was to manufacture would not meet the purpose of the vendee unless it could be successfully operated in the earth to be bored into through such strata to overcome the defects of the diamond drill. It was sold to accomplish this very object. Thereupon the agent of the vendor turned to his desk, and, in the form of a letter or proposition, stated, not as in the contract in the Seitz Case, supra, that the company agreed to furnish a machine "as constructed by the party of the first part," but "we propose to furnish you one Class F3 drill," with certain equipments, which proposition Mallory's agent instantly accepted at the bottom of the submitted letter.

If it is to be established as law that such method of concluding such transactions precludes the vendee from asserting an implied warranty that the machine to be manufactured is suitable to the use for which the manufacturer is advised the purchaser is buying it, it does seem to me that the doctrine of implied warranty can afford no protection to the confiding purchaser against the smart secretary of the manufacturer.

The case of Grand Avenue Hotel v. Wharton et al., 79 Fed. 43, 24 C. C. A. 441, when read with regard to the particular facts of

that case, and the qualifying language of Judge Lochren, furnishes little support to the majority opinion.   There was a written contract in that case, whereby the defendant agreed to furnish and deliver to plaintiff, on the cars at Philadelphia, two certain described safety boilers, of 150 horse power each, and the services of a man to put them up, for a given sum, to be paid for as specified; the contract containing specifications of the material and the construction of the boilers in their parts.   The defense interposed was that the vendor knew that the boilers were to be used in the Midland Hotel at Kansas City, and that the water to be used in operating them was supplied from the Missouri river.   The contention was that the company should have taken notice of the quality of that water, as to the amount of sand it contained in solution, which rendered the use of the boilers largely ineffective. Aside from the fact that there was nothing in the evidence to show any knowledge on the part of the vendor as to the peculiar properties of the water of the Missouri river as affecting the use of the boilers, there was present in the case the affirmative fact that the hotel had in prior use similar boilers.   So that the purchaser not only had its own engineer run and operate the boiler, but it had a special knowledge of the quality and properties of the Missouri river water.   While there was present in the case knowledge on the part of the vendor that Missouri river water was to be used in operating the boilers, it could not be said that the vendee had any right to rely upon the fact that the vendor knew the use to which the boilers were to be put.   It was of this character of case that evidence was excluded tending to show the knowledge of the plaintiff as the basis of invoking an implied warranty.   It can therefore better be understood why the learned judge, while stating in the first paragraph of the opinion that, "where a manufacturer contracts to supply an article which he manufactures to be applied to a particular use, of which he is advised, so that the buyer necessarily trusts to the judgment and skill of the manufacturer, there is an implied warranty that the article shall be reasonably fit for the use to which it is to be applied," he then said:

"But when a known, described, and definite article is ordered of a manufacturer, although it be stated by the purchaser to be required for a particular use, yet if the known, described, and definite thing be actually supplied, there is no implied warranty that it shall answer the particular purpose intended by the buyer. * * * Here the purchaser contracted for a definite, well-known kind of boiler; its president having then a boiler of the same kind in use."

From which it is apparent that the ruling was based upon the proposition that the buyer in that case was bargaining for a specific article known to him.

Mr. Justice Harlan, in Kellogg Bridge Co. v. Hamilton, 110 U. S. 108, 3 Sup. Ct. 537, 28 L. Ed. 86, cited in the foregoing opinion, discussing the applicability of the doctrine of implied warranty, summed up the rules as follows:

"According to the principles of decided cases, and upon clear grounds of justice, the fundamental inquiry must always be whether, under the circum-

stances of the particular case, the buyer had the right to rely and necessarily relied on the judgment of the seller, and not upon his own. In ordinary sales the buyer has an opportunity of inspecting the article sold, and, the seller not being the maker, and therefore having no special or technical knowledge of the mode in which it was made, the parties stand upon grounds of substantial equality. If there be, in fact, in the particular case, any inequality, it is such that the law cannot, or ought not to attempt to, provide against. Consequently the buyer in such cases—the seller giving no express warranty and making no representations tending to mislead—is holden to have purchased entirely on his own judgment. But when the seller is the maker or manufacturer of the thing sold, the fair presumption is that he understood the process of its manufacture, and was cognizant of any latent defect caused by such process, and against which reasonable diligence might have guarded. This presumption is justified in part by the fact that the manufacturer or maker by his occupation holds himself out as competent to make articles reasonably adapted to the purposes for which such or similar articles are designed. When, therefore, the buyer has no opportunity to inspect the article, or when, from the situation, inspection is impracticable or useless, it is unreasonable to suppose that he bought on his own judgment, or that he did not rely on the judgment of the seller as to latent defects of which the latter, if he use due care, must have been informed during the process of manufacture. If the buyer relied, and, under the circumstances, had reason to rely, on the judgment of the seller, who was the manufacturer or maker of the article, the law implies a warranty that it is reasonably fit for the use for which it was designed; the seller at the time being informed of the purpose to devote it to that use. * * * In the cases of sales by manufacturers of their own articles for particular purposes, communicated to them at the time, the argument was uniformly pressed that, as the buyer could have required an express warranty, none should be implied. But plainly such an argument impeaches the whole doctrine of implied warranty, for there can be no case of a sale of personal property in which the buyer may not, if he chooses, insist on an express warranty against latent defects."

In that case there was a written contract as to what the parties were to do in completing the bridge, in connection with the work already done by the bridge company. There was no express warranty about the character of the work the bridge company had already done. But the bridge company knew that Hamilton was to use the structure for a particular purpose. Its internal construction and adaptability were known to the bridge company, but presumptively could be known to Hamilton only after using it. Of this situation the learned justice said:

"The buyer did not, because, in the nature of things, he could not, rely on his own judgment; and, in view of the circumstances of the case and the relations of the parties, he must be deemed to have relied on the judgment of the company, which alone of the parties to the contract had or could have knowledge of the manner in which the work had been done. The law therefore implies a warranty that this falsework was reasonably suitable for such use as was contemplated by both parties. It was constructed for a particular purpose, and was sold to accomplish that purpose; and it is intrinsically just that the company, which held itself out as possessing the requisite skill to do work of that kind, and therefore as having special knowledge of its own workmanship, should be held to indemnify the vendee against latent defects arising from the mode of construction, and which the latter, as the company well knew, could not by any inspection discover for himself."

In Pullman Palace Car Co. v. Metropolitan Street Railway Co., 157 U. S. 94, 15 Sup. Ct. 503, 39 L. Ed. 632, the contract for the building of the cars by the Pullman Company was in writing, containing specifications as to the thing to be made and shipped—as

much so as in the case at bar.   Notwithstanding the fact that the contract provided for an inspection of the cars after completion, by the purchaser's expert engineer, before they were delivered, it was contended by the vendee, when sued for the purchase money, that there was an inherent defect in the brakes furnished for the cars, not discoverable by inspection, and that there was an implied warranty of such latent defects in the cars.   As the Pullman Company was advised that the cars to be manufactured were to be operated on a particular line of road, with peculiar, acute curves, requiring brakes especially adapted thereto, it was held that there was an implied warranty on the part of the manufacturer that the brakes constructed by it as a part of the machinery would meet the requirements of the purchaser.   Inasmuch as the defendant had accepted the cars, and the only defect was the insufficiency of the brakes, which the vendee had the means of supplying, it was ruled that it could recoup for the difference which it would cost to equip the cars with such obtainable brakes.

The utility of the machinery furnished by the plaintiff company in this case consisted entirely in the adaptability of the drill bit to accomplish the required boring in the peculiar strata formation where Mallory was exploring for coal.   While the plaintiff submitted in writing an itemized specification of the equipment to be furnished by it, and the cost thereof, and Mallory agreed by the acceptance to pay the sum specified, it was practically contemporaneous with the information given the manufacturer by the purchaser as to the particular use to which it was to be applied, and with the knowledge that, unless it accomplished the desired work, it would be practically useless to the purchaser.   It does seem to me therefore, that if there can be a case where the law writes into the executory contract, where the manufacturer undertakes to manufacture a machine with full knowledge of the purpose for which it is bought, a warranty that it is fit for the specified use, and when the manufacturer knows that the vendee is relying upon the manufacturer's superior knowledge of the fitness of the machine, this is clearly a proper case for the application of this wholesome rule of law.